# EXHIBIT "A"

Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**THE LAW OFFICES OF JOSEPH R. MANNING, JR.**
**A PROFESSIONAL CORPORATION**
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Phone: (949) 200-8755
Fax: (866) 843-8308

Attorneys for Plaintiff MARLENE Y. BAILEY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| MARLENE Y. BAILEY, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC, a business entity form unknown; THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC. ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10, a business entity form unknown; NBS DEFAULT SERVICES, LLC, a business entity form unknown; and DOES 1-100, inclusive,<br><br>        Defendants. | **Case No.: 5:14-cv-1586-JGB-KKx**<br><br>**PLAINTIFF'S SUPPLEMENTAL COMPLAINT** |

## **INTRODUCTION**

1. Plaintiff files this supplemental complaint to assert claims related to the loan modification offered by SLS after the filing of Plaintiff's Complaint.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

## GENERAL ALLEGATIONS

2. In or around October, 2014, Plaintiff applied for a loan modification.  On October 21, 2014, SLS approved Plaintiff for a standard trial to modification program.  A true and correct copy of the October 21, 2014 trial plan offer letter is attached hereto as **Exhibit A**.

3. Plaintiff made all three payments under the trial plan and on February 12, 2015, SLS sent Plaintiff the final loan modification agreement (the "Modification Agreement").  The cover letter to the Modification Agreement states that "[i]f you do not send both signed originals of the Modification agreement by [February 28, 2015], *you must contact us if you still wish to be considered for this program and have your loan modified."*  The letter also advises "[y]ou may wish to consult your attorney or financial advisor to review the terms of the modification; we encourage you to return it to us as soon as possible."  A true and correct copy of the letter with the enclosed Modification Agreement is attached hereto as **Exhibit B**.

4. On February 26, 2015, Plaintiff sent SLS a letter stating in no uncertain terms that **she does desire to accept the loan modification** but there are errors in the Modification Agreement that needed to be resolved, namely that the Escrow Amount does not include the Land Lease payments for the Subject Property, which payments are "Escrow Items" under the Deed of Trust.  Plaintiff requested an itemization of the Escrow Advances and the Monthly Escrow Payment and that SLS make the necessary corrections to the Modification Agreement.  A true and correct copy of the February 26, 2015 fax letter is attached hereto as **Exhibit C**.

5. Section 3 of the Deed of Trust states in pertinent part:

> **3. Funds for Escrow Items**.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property;  ***(b) leasehold payments or***

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

***ground rents on the Property, if any***; (c) premiums for any and all insurance required by Lender in lieu of the payment of Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender under Section 5; and (d) Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." (emphasis added)

6. Pursuant to the Deed of Trust, SLS was required to include the land lease payments in the escrowed amounts under the Modification Agreement. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit D**.

7. SLS did not respond to Plaintiff's letter regarding the errors in the Modification Agreement and did not correct the errors in the Modification Agreement. Plaintiff followed up with SLS regarding her request for correction of the errors in writing again on March 27, 2015, April 3, 2015, and April 30, 2015. True and correct copies of these letters are attached hereto as **Exhibit E**.

8. In compliance with the Modification Agreement, Plaintiff sent certified funds of $4,033.23 to SLS on March 10, 2015, March 27, 2015, April 30, 2015, and May 29, 2015 via Federal Express for her March, April, May, and June, 2015 payments, respectively. True and correct copies of the cashier's checks mailed to SLS are attached hereto **Exhibit F**.

9. SLS claims that on May 1, 2015, SLS notified Plaintiff that "certified funds were not received causing the modification to be denied." A true and correct copy of the May 1, 2015 letter is attached hereto as **Exhibit G**. SLS's stated basis for cancelling the modification is false. Plaintiff mailed certified funds to SLS for her March, April, May and June, 2015 modification payments. SLS accepted and cashed Plaintiff's payments. True and correct copies of the cashier's check receipts for each payment are attached hereto as **Exhibit H**.

10. On May 4, 2015, SLS returned Plaintiff's payments by sending Plaintiff a check in the amount of the payments made by Plaintiff under the terms of the loan

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA, 92660

modification.

11. On June 1, 2015, Plaintiff's counsel sent a Notice of Error to SLS regarding SLS's failure to respond to and correct the errors in the Modification Agreement. A true and correct copy of the June 1, 2015 Notice of Error is attached hereto as **Exhibit I**.

12. Finally, on August 7, 2015, SLS sent Plaintiff an Escrow Analysis, a true and correct copy of which is attached hereto as **Exhibit J.** The Escrow Analysis confirms SLS failed to include the land lease payments in the escrow payment under the Modification Agreement. The Escrow Analysis shows the land lease payments were escrowed by the prior servicer, Bank of America, N.A., but that SLS has not included the payments as Escrow Items as required by the Deed of Trust.

13. SLS has failed and refused to correct its error and send Plaintiff an amended Modification Agreement. Instead, Defendants wrongfully recorded a Notice of Trustee's Sale against the Subject Property, a true and correct copy of which is attached hereto as **Exhibit K**. The Notice of Sale noticed an October 5, 2015 trustee sale.

14. Plaintiff would have continued to perform under the loan modification by timely making her modified payments had Defendants not wrongfully cancelled the loan modification due to their own ineffective and unreasonably slow processing systems. It took SLS over five months to resolve to Plaintiff's requests for clarification of the modification terms.

15. It is clear from the escrow analysis that SLS finally provided on August 7, 2015 that the prior mortgage servicer, Bank of America, escrowed the land lease payments (as required by the Deed of Trust) but SLS did not even though they should have been pursuant to the Deed of Trust.

16. SLS should have responded and corrected its error by adjusting the escrow figures to the correct amounts but it did not and instead chose to proceed with the

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**PLAINTIFF'S SUPPLEMENTAL COMPLAINT**

1    foreclosure.

2    17. On October 13, 2015, the Subject Property sold at a trustee's sale conducted by

3    NBS Default Services, LLC ("NBS"), acting as trustee under the Deed of Trust.

4    The Bank of New York Mellon fka The Bank of New York, as Trustee for the

5    Certificateholders of the CWALT, Inc., Alternative Loan Trust 2006-OA10

6    reacquired the Subject Property at the sale.  On October 16, 2015, NBS recorded a

7    Trustee's Deed Upon Sale ("TDUS") with the Riverside County Recorder's Office.

8    A true and correct copy of the TDUS is attached hereto as **Exhibit L**.

9    18. The foregoing acts and material omissions of the Defendants herein alleged were

10   undertaken willfully, persistently, intentionally, knowingly, and/or in gross or

11   reckless disregard of Plaintiff's notice and disclosure rights.

12   19. Defendants, as employers of the authorized representatives who had contact with

13   Plaintiff, had advanced knowledge of the unfitness of the employee representatives

14   and employed such representatives with a conscious disregard of the rights or safety

15   of others, or authorized/ratified the wrongful conduct for which the damages are

16   awarded or was personally guilty of oppression, fraud, or malice.

17   20. Defendants are corporate employers. As such, their officers, directors, and/or

18   managing agents had advanced knowledge of the willful and despicable conduct

19   herein alleged and ratified the aforementioned acts of their authorized

20   representatives and employees.

21   21. Plaintiff has been harmed by Defendants' failure to provide accurate material

22   disclosures and notices so that Plaintiff can cure any default and extinguish the

23   transaction by operation of law.

24   22. Defendants are acting in concert to deprive Plaintiff of her civil rights by attempting

25   to take the Subject Property without due process of law.

26   23. Plaintiff is ready, willing and able to continue performing her obligations under the

27   loan modification agreement, and Plaintiff is ready, willing and able to make such

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA, 92660

---

**PLAINTIFF'S SUPPLEMENTAL COMPLAINT**

1    payments at the times required of her by law.

2    ## TENTH CLAIM FOR RELIEF:  BREACH OF CONTRACT

3    ## (AS TO SLS AND BONY MELLON)

4    24. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though

5    fully set forth in this cause of action.

6    25. On October 21, 2014, SLS approved Plaintiff for a standard trial to modification

7    program (**Ex. A**).  Plaintiff made all three payments under the trial plan and on

8    February 12, 2015, SLS sent Plaintiff the final loan modification agreement (the

9    "Modification Agreement").  The cover letter to the Modification Agreement states

10   that "[i]f you do not send both signed originals of the Modification agreement by

11   [February 28, 2015], *you must contact us if you still wish to be considered for this*

12   *program and have your loan modified."*  The letter also advises "[y]ou may wish to

13   consult your attorney or financial advisor to review the terms of the modification;

14   we encourage you to return it to us as soon as possible."  (**Ex. B.**)

15   26. On February 26, 2015, Plaintiff sent SLS a letter stating in no uncertain terms that

16   **she does desire to accept the loan modification** but there are errors in the

17   Modification Agreement that needed to be resolved, namely that the Escrow

18   Amount does not include the Land Lease payments for the Subject Property, which

19   payments are "Escrow Items" under the Deed of Trust.  Plaintiff requested an

20   itemization of the Escrow Advances and the Monthly Escrow Payment and that

21   SLS make the necessary corrections to the Modification Agreement. (**Ex. C.**)

22   27. Section 3 of the Deed of Trust (**Ex. D**) states in pertinent part:

23       **3. Funds for Escrow Items.**  Borrower shall pay to Lender on
24       the day Periodic Payments are due under the Note, until the
         Note is paid in full, a sum (the "Funds") to provide payment of
25       amounts due for:  (a) taxes and assessments and other items
         which can attain priority over this Security Instrument as a lien
26       or encumbrance on the Property; ***(b) leasehold payments or***
27       ***ground rents on the Property, if any***; (c) premiums for any and

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

28

---

all insurance required by Lender in lieu of the payment of Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender under Section 5; and (d) Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." (emphasis added)

28. Pursuant to the Deed of Trust, SLS was required to include the land lease payments in the escrowed amounts under the Modification Agreement. On August 7, 2015, SLS sent Plaintiff an Escrow Analysis (**Ex. J**). The Escrow Analysis confirms SLS failed to include the land lease payments in the escrow payment under the Modification Agreement. The Escrow Analysis shows the land lease payments were escrowed by the prior servicer, Bank of America, N.A., but that SLS has not included the payments as Escrow Items as required by the Deed of Trust.

29. In compliance with the Modification Agreement, Plaintiff sent certified funds of $4,033.23 to SLS on March 10, 2015, March 27, 2015, April 30, 2015, and May 29, 2015 via Federal Express for her March, April, May, and June, 2015 payments, respectively (**Ex. F.**)

30. SLS claims that on May 1, 2015, SLS notified Plaintiff that "certified funds were not received causing the modification to be denied." (**Ex. G.**) **SLS's stated basis for cancelling the modification is false. Plaintiff mailed certified funds to SLS for her March, April, May and June, 2015 modification payments.** SLS accepted and cashed Plaintiff's payments (**Ex. H.**)

31. Defendants breached the Deed of Trust and Modification Agreement by failing to properly calculate Plaintiff's escrow amount; failing to correct the errors in the Modification Agreement; and wrongfully cancelling the Modification Agreement on grounds that certified funds were not received when in fact Plaintiff timely made all required payments under the Modification Agreement via certified funds.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD, STE. 150
NEWPORT BEACH, CA 92660

---

**PLAINTIFF'S SUPPLEMENTAL COMPLAINT**

32. As a direct and proximate result of Defendants' breach, Plaintiff has suffered, and continues to suffer, general and special damages in an amount according to proof at trial.

## ELEVENTH CLAIM FOR RELIEF:  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (AS TO SLS AND BONY MELLON)

33. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

34. In every contract there is an implied covenant of good faith and fair dealing that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.

35. The law implied a covenant in all contracts that each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.

36. Moreover, the covenant imposes on each party to the contract the duty to refrain from doing anything which would render performance of the contract impossible by any act their own, and also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose.

37. Defendants breached the implied covenant of good faith and fair dealing by failing to properly calculate Plaintiff's escrow amount; failing to correct the errors in the Modification Agreement; and wrongfully cancelling the Modification Agreement on grounds that certified funds were not received when in fact Plaintiff timely made all required payments under the Modification Agreement via certified funds.

38. As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in an amount according to proof at trial.

## TWELFTH CLAIM FOR RELIEF:  VIOLATIONS OF CAL. CIVIL CODE §2924.11
### (AS TO ALL DEFENDANTS)

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

39. Plaintiff re-alleges and incorporates by reference, all paragraphs above, as though fully set forth in this cause of action.

40. In response to mortgage servicer improprieties and the growing number of foreclosures, 49 state attorneys general served suit against the country's five major mortgage servicers. As a consequence, these mortgage servicers agreed to enter into consent judgments known as the National Mortgage Settlement ("NMS"). The NMS imposed new servicing standards on these servicers. The California Legislature passed the Homeowner's Bill of Rights ("HBOR") to give borrowers a private right of action to enforce these protections in court and to apply these

requirements to all servicers, not just the five NMS signatories.

41. HBOR is codified in Civil Code sections 2920.5, 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924, 2924.9, 2924.10, 2924.11, 2924.12, 2924.17, 2924.18 and 2924.19.

42. The purpose of HBOR is to ensure that, as part of the non-judicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, any available loss mitigation options offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Cal. Civ. Code § 2923.4(a).

43. Provisions of HBOR, including Civil Code §§ 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18, apply only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes. Cal. Civ. Code § 2924.15.

44. As applied herein, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through his or her mortgage servicer. Cal. Civ. Code § 2920.5(c)(1).

JOSEPH R. MANNING, JR., ESQ.
4667 MacArthur Blvd., Ste. 150
Newport Beach, CA 92660

---

**PLAINTIFF'S SUPPLEMENTAL COMPLAINT**

45. As applied herein, "foreclosure prevention alternative" means a first lien loan modification or other available loss mitigation option.  Cal. Civ. Code § 2920.5(b).

46. The HBOR protects a homeowner who has become a victim of a foreclosure that was wrongfully advanced.  "After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale.  If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)."

47. Pursuant to Civil Code §2924.11(b), under the HBOR, if a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale if the borrower is in compliance with the terms of a written trial or permanent loan modification.  (Cal. Civ. Code § 2924.11(b)(1).)

48. On October 21, 2014, SLS approved Plaintiff for a standard trial to modification program (**Ex. B**).  Plaintiff made all three payments under the trial plan and on February 12, 2015, SLS sent Plaintiff the final loan modification agreement (the "Modification Agreement").  The cover letter to the Modification Agreement states that "[i]f you do not send both signed originals of the Modification agreement by [February 28, 2015], *you must contact us if you still wish to be considered for this program and have your loan modified.*"  The letter also advises "[y]ou may wish to

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

consult your attorney or financial advisor to review the terms of the modification; we encourage you to return it to us as soon as possible." (**Ex. C.**)

49. On February 26, 2015, Plaintiff sent SLS a letter stating in no uncertain terms that **she does desire to accept the loan modification** but there are errors in the Modification Agreement that needed to be resolved, namely that the Escrow Amount does not include the Land Lease payments for the Subject Property, which payments are "Escrow Items" under the Deed of Trust. Plaintiff requested an itemization of the Escrow Advances and the Monthly Escrow Payment and that SLS make the necessary corrections to the Modification Agreement. (**Ex. D.**)

50. Pursuant to the Deed of Trust, SLS was required to include the land lease payments in the escrowed amounts under the Modification Agreement. On August 7, 2015, SLS sent Plaintiff an Escrow Analysis (**Ex. J**). The Escrow Analysis confirms SLS failed to include the land lease payments in the escrow payment under the Modification Agreement. The Escrow Analysis shows the land lease payments were escrowed by the prior servicer, Bank of America, N.A., but that SLS has not included the payments as Escrow Items as required by the Deed of Trust.

51. In compliance with the Modification Agreement, Plaintiff sent certified funds of $4,033.23 to SLS on March 10, 2015, March 27, 2015, April 30, 2015, and May 29, 2015 via Federal Express for her March, April, May, and June, 2015 payments, respectively (**Ex. F.**)

52. SLS claims that on May 1, 2015, SLS notified Plaintiff that "certified funds were not received causing the modification to be denied." (**Ex. G.**) **SLS's stated basis for cancelling the modification is false. Plaintiff mailed certified funds to SLS for her March, April, May and June, 2015 modification payments.** SLS accepted and cashed Plaintiff's payments (**Ex. H.**)

53. Defendants wrongfully recorded a Notice of Trustee's Sale against the Subject Property (**Ex. K**) despite the fact that Plaintiff was in compliance with the

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

1  Modification Agreement.

2  54. Pursuant to Civil Code §§ 2924.12, Plaintiff is entitled to actual damages, attorneys'

3  fees, and treble damages for Defendants' material and uncorrected violations of Civil

4  Code § 2924.11 alleged herein.

## THIRTEENTH CLAIM FOR RELIEF: NEGLIGENCE
## (AS TO ALL DEFENDANTS)

7  55. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though

8  fully set forth in this cause of action.

9  56. Defendants, acting as Plaintiff's lender and servicer, undertook a review of

10  Plaintiff's Loan for

11  modification and having done so it owed Plaintiff the duty to exercise reasonable

12  care in processing and reviewing her applications for loan modification.

13  57. The loan modification process was intended to affect Plaintiff, as it could

14  potentially modify her loan.  It was foreseeable that Plaintiff would be harmed by

15  the mishandling of her application.  Defendants definitely knew that mishandling

16  Plaintiff's application would directly result in no modification for Plaintiff and

17  deprive Plaintiff of the opportunity to seek other relief and avoid foreclosure.

18  Defendants' blameworthiness is evident from Plaintiff's inability to protect her own

19  interests in the loss mitigation process.  The recent HBOR and Mortgage Servicing

20  Rules under the Real Estate Settlement Procedures Act (Regulation X) speak to the

21  growing policy concerns about dual tracking and the negligent review of

22  applications.

23  58. Defendants, and each of them, breached their duty by: (1) failing to properly

24  process Plaintiff's modification application; (2) miscalculating the terms of the

25  Modification Agreement, namely the escrow amount; (3) failing the correct the

26  errors in the Modification Agreement; (4) failing to honor the Modification

27  Agreement by returning Plaintiff's payments; and (5) continuing foreclosure in

28  violation of public policy and the HBOR's restrictions on dual-track foreclosures.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

59. As a direct and proximate result of Defendants' negligence, Plaintiff has been harmed in that the failure to correctly calculate the escrow amounts under the Modification Agreement, and the failure to accept Plaintiff's payments under the Modification Agreement deprived Plaintiff of the opportunity of obtaining loss mitigation assistance as Plaintiff now faces imminent foreclosure. Plaintiff has been harmed in that she has suffered the derogatory ratings by the credit agencies that have made it difficult for her to establish creditworthiness. Plaintiff has been harmed in that she has been required to retain legal counsel and has paid money to protect her interest in the Subject Property that otherwise she would not have had to expend. Plaintiff has been harmed in that she has lost substantial equity in the Subject Property.

60. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and continues to suffer, general and special damages in an amount to be determined at trial.

## FOURTEENTH CLAIM FOR RELIEF: VIOLATIONS OF CAL. BUSINESS AND PROFESSIONS CODE §17200
## (AS TO ALL DEFENDANTS)

61. Plaintiff re-alleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

62. Plaintiff brings this action against Defendants pursuant to California Business and Professions Code §17200, *et seq.,* referred to as the Unfair Competition Law (the "UCL").

63. California Business and Professions Code §17200 prohibits "any unlawful, unfair or fraudulent business act or practice." For the reasons described herein, Defendants have engaged in unfair or fraudulent business acts or practices in violation of Bus. and Prof. Code §17200, *et. seq.*

64. The Court has jurisdiction over this action pursuant to California Bus. and Prof. Code §17200, *et seq.,* specifically Bus. and Prof. Code §17203, which provides that

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and Bus. and Prof. Code §17204, which provides for actions for any relief pursuant to the Unfair Competition Law ("UCL") to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association, or by any person acting for the interests of itself, its members or the general public.

65. As alleged herein, Defendants engaged in unlawful business practices in connection with the servicing of Plaintiff's mortgage loan, the processing of Plaintiff's requests for an alternative to foreclosure, and the foreclosure proceedings against the Subject Property. The unlawful practices committed by Defendants include:

   a. Breaching the Deed of Trust and the Modification Agreement by failing to properly calculate Plaintiff's escrow amount; failing to correct the errors in the Modification Agreement; and wrongfully cancelling the Modification Agreement on grounds that certified funds were not received when in fact Plaintiff timely made all required payments under the Modification Agreement via certified funds;

   b. Recording the Notice of Trustee's Sale and attempting to conduct a trustee sale while Plaintiff is in compliance with the terms of the Modification Agreement, in violation of Civil Code § 2924.11;

   c. Negligently processing Plaintiff's applications for a loan modification;

   d. Misrepresenting the status of Plaintiff's loan modification application;

   e. Misrepresenting the status of the foreclosure;

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

f.  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

g.  Concealing the true character, quality and nature of their assessment of marked-up fees against Plaintiff's account; and

h.  Foreclosing on the Subject Property without the legal authority to do so.

66. Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under Bus. and Prof. Code §17200, *et seq.*, in that said acts and practices offend public policy and are substantially injurious to Plaintiff and all consumers. Said acts and practices have no utility whatsoever, much less sufficient utility to outweigh the substantial harm to Plaintiff, other consumers, and potential homeowners.

67.  These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior.  Defendants' actions are against public policy as the HBOR and Regulation X under RESPA and Regulation Z under TILA were exacted to prevent unnecessary foreclosures by providing borrowers with accurate and complete loan information and a full and fair opportunity to be reviewed for all available alternatives to foreclosure.

68. Defendants' acts and practices, as hereinabove alleged, constitute "fraudulent" business acts under § 17200 in that said acts and practices are likely to deceive the public and effect consumers' legal rights and obligations.  Defendants' acts, including, but not limited to, active deception, falsifying and/or failing to deliver material documents, and concealment of information to prevent consumers from exercising rights to which they are entitled.

69. Moreover, in the course and conduct of its loan servicing and collection, Defendants omitted a true itemization that identifies the nature of each fee, and it failed to disclose the nature of the charges and fees assessed. Defendants concealed the category identified as "Miscellaneous Fees" or "Other Charges" reflecting marked-up and/or unnecessary fees, never actually incurred by Defendants. Relying on

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

Defendants, Plaintiff and members of the general public believe they are obligated to pay the amounts specified in Defendants' communications for default-related services.

70.   Plaintiff relied on a reasonable expectation that Defendants complied with the plain meaning of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans, and as a result, Plaintiff relied on Defendants' disclosures about the fees on their statements, reasonably believing the "Other Charges," "Other Fees" or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, tricking trusting borrowers and to dissuading them from challenging Defendants' unlawful fee assessments. Defendants concealed this scheme by telling borrowers, in statements and other documents, that such fees are "allowed by borrowers' Note and Security Instrument," or that they are "in accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiff, she would have been aware of the mark-ups and unnecessary nature of the fees and would have disputed the charges and not paid them.

71.   As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct, Defendants wrongfully foreclosed on the Subject Property causing Plaintiff to lose title to, and interest in, the Subject Property and face the imminent eviction from her home.  Such eviction will cause Plaintiff to suffer further immediate and irreparable injury, loss and damage.  Further, Defendants' wrongful foreclosure caused Plaintiff to lose substantial equity in the home.  This loss of equity, which should be credited back to Plaintiff, constitutes a loss of money.

72.   Defendants' unfair and deceptive business acts or practices caused a direct and proximate injury to Plaintiff and the general public. Plaintiff is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been
obtained by Defendants as a result of such business acts or practices.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD, STE. 150
NEWPORT BEACH, CA 92660

73. Due to Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff suffered a substantial, ascertainable loss. Therefore, pursuant to Business and Professions Code §§ 17203 and 17204, Defendants should be enjoined from continuing such practices.

74. In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of the monies collected and realized by Defendants.

## **PRAYER**

**WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:**

1. For damages sustained by Plaintiff because of Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

2. For reasonable attorney's fees and costs of suit, as allowed by law, and all other relief

   granted under California Civil Code § 2924.12;

3. Pursuant to Bus. & Prof. Code §17200, et seq., that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them, be permanently enjoined from making any false or misleading statements or falsely reporting negative credit to reporting agencies, and from selling the foreclosed property on an

   unlawfully procured debt;

4. Pursuant to Bus. & Prof. Code §17200, et seq., the Court makes such orders or judgments necessary to prevent the use or employment by any Defendant of any act violating §17200, et seq.; and restore to any person in interest, any money or property, real or personal, which may have been acquired by means of any such act;

5. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

6. For interest on the sum at the rate of 10% per annum;

7. For punitive damages against Defendants due to their intentional, reckless or willful wrongful acts;

8. For such other and further relief as this Court deems just and proper.

Dated: December 7, 2015        **LAW OFFICES OF JOSEPH R. MANNING, JR.**
**A PROFESSIONAL CORPORATION**

By:

Joseph R. Manning Jr., Esq.
Attorneys for Plaintiff

# EXHIBIT A



8742 Lucent Boulevard » Suite 300 » Highlands Ranch, CO 80129           ☎ 800-306-8059
                                                                        ☎ 720-241-7526

October 21, 2014

MARLENE Y BAILEY                                    RE: Loan Number: 1005506474
                                                   Property Address:
480 E BOGERT TRL                                   480 E BOGERT TRL
PALM SPRINGS, CA 92264                             PALM SPRINGS, CA 92264

THIS IS FOR INFORMATIONAL PURPOSES ONLY. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

Dear MARLENE Y BAILEY,

Specialized Loan Servicing LLC ("SLS") has conducted a review of your application submitted for a foreclosure prevention option.

Below is a list of the foreclosure alternatives you were evaluated for and the result of each:

**Congratulations! You have been approved for a Foreclosure Prevention Option: Standard Trial to Modification Program. Please see enclosed documentation for terms of the extended offer.**

Please note, if you are currently in a bankruptcy proceeding, approval of any foreclosure prevention option for which you may be eligible is contingent on approval of the bankruptcy court in your bankruptcy case. If an Order is entered denying the foreclosure prevention option, that Order supersedes any agreement contained herein. If you have any questions or concerns regarding the process to obtain court approval, please contact your attorney.

- **Standard Trial to Modification Program - Approved**

- **Home Affordable Modification Program Tier 2 - Denied**

    - Your loan is not eligible for the Home Affordable Modification Program because the current unpaid principal balance on your loan is higher than the program limit as defined by Making Home Affordable (MHA) guidelines. ($729,750 for a one unit property, $934,200 for a two unit property, $1,129,250 for a three unit property and $1,403,400 for a four unit property).

---

Setting the Standard
www.sls.net

32

 **SLS**

8742 Lucent Boulevard · Suite 300 · Highlands Ranch, CO 80129          ☎ 800-306-6059
                                                                        📠 720-241-7526

- **Home Affordable Modification Program Tier 1 - Denied**

  - Your current monthly housing expense, which includes the monthly principal and interest payment on your first lien mortgage loan plus property taxes, hazard insurance and homeowner's dues (if any) is less than or equal to 31% of your gross monthly income (your income before taxes and other deductions) which, we verified as $12,990.39. Your housing expense must be greater than 31% of your gross monthly income to be eligible for a Home Affordable Modification. If you believe this verified income is incorrect, please contact us.

  - Your loan is not eligible for the Home Affordable Modification Program because the current unpaid principal balance on your loan is higher than the program limit as defined by Making Home Affordable (MHA) guidelines. ($729,750 for a one unit property, $934,200 for a two unit property, $1,129,250 for a three unit property and $1,403,400 for a four unit property).

- **Disaster Modification Program - Denied**

  - After reviewing the information you provided us we have determined that you are not at risk of default because: you are current on your mortgage loan or you have not documented a financial hardship that has reduced your income or increased your expenses, thereby impacting your ability to pay your mortgage as agreed, you have sufficient net income to pay your current mortgage payment, or you have the ability to pay your current mortgage payment using cash reserves or other assets.

  - Your property was not impacted by the declared disaster in your area.

  - We do not show that your property is located in a federally declared disaster area.

  - Your loan is an active foreclosure.

- **Home Affordable Modification Unemployment Program - Denied**

  - Your loan is not eligible for the Home Affordable Modification Program because the current unpaid principal balance on your loan is higher than the program limit as defined by Making Home Affordable (MHA) guidelines. ($729,750 for a one unit property, $934,200 for a two unit property, $1,129,250 for a three unit property and $1,403,400 for a four unit property).

  - The total delinquency at the time of your request for a forbearance plan exceeds 12 months of your scheduled monthly mortgage payment (including taxes and insurance, if applicable).

  - We are unable to offer you forbearance plan under the Home Affordable Unemployment Program because according to the information you provided you were not unemployed at the time of your request.

---



8742 Lucent Boulevard ‹ Suite 300 ‹ Highlands Ranch, CO 80129

800-306-8059

720-241-7526

- **Standard Repayment Plan - Denied**

  - Review of your financials indicates that a repayment plan payment is not affordable; therefore, you are not eligible for a repayment plan.

  - Based on your current monthly gross income we could not create an affordable payment within the guidelines of this program. Our records show that your current monthly income before taxes and other deductions is $12,990.39.

- **Standard Modification Program - Not Evaluated**

  - We didn't review your loan for this option because we've approved you for Standard Trial to Modification Program.

- **Extension - Not Evaluated**

  - We didn't review your loan for this option because we've approved you for Standard Trial to Modification Program.

- **Forbearance Extension - Not Evaluated**

  - We didn't review your loan for this option because we've approved you for Standard Trial to Modification Program.

- **Forbearance Program - Not Evaluated**

  - We didn't review your loan for this option because we've approved you for Standard Trial to Modification Program.

- **Short Negotiated Payoff - Not Evaluated**

  - We didn't review your loan for this option because we've approved you for Standard Trial to Modification Program.

- **Refinance with Short Payoff - Not Evaluated**

  - We didn't review your loan for this option because we've approved you for Standard Trial to Modification Program.



8742 Lucent Boulevard • Suite 300 • Highlands Ranch, CO 80129

☎ 800-306-6059
🖷 720-241-7526

## Second Independent Review of Modification Denial

If the property is your primary residence and this is your first evaluation, you have the right to request a second independent review to determine your eligibility for a loan modification. To request a second review you must send us your request in writing which must be received by us no later than November 20, 2014. Please include a copy of this letter with your request including any supporting documentation. If the property is your primary residence, this is your first evaluation and your request is received in the disclosed time frame, we will not initiate or continue with foreclosure during the review process. Your written request must either be mailed or faxed to us as follows:

| Mail | Fax |
|---|---|
| Specialized Loan Servicing LLC<br>P.O. Box 636005<br>Littleton, CO 80163 | 1-720-241-7218<br>(Page limit per transmission is 25 pages) |

ENCLOSURES:

- Change of Intent Form and additional information on foreclosure prevention options.
- Standard Modification Agreement

The requirements for this evaluation were set forth and performed in accordance with the Pooling and Servicing Agreement between Specialized Loan Servicing LLC and The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10.

If you have questions concerning this letter or need further assistance, you may contact me or our Customer Resolution Department at 1-800-306-6059 Monday through Friday, 6:00 a.m. until 9:00 p.m. MT, Saturday 6:00 a.m. until 12 p.m. MT or TDD 1-800-268-9419 Monday through Friday, 8:00 a.m. until 5:00 p.m. MT.

If you have other questions about foreclosure prevention alternatives that cannot be answered by us, please call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). This Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.

Sincerely,

Justin, 10367
Customer Resolution Department
Specialized Loan Servicing LLC

---

**Setting the Standard**
www.sls.net



8742 Lucent Boulevard ▪ Suite 300 ▪ Highlands Ranch, CO 80129

☎ 800-306-6059

📠 720-241-7526

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY LAW TO INFORM YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR. HOWEVER, THE PURPOSE OF THIS COMMUNICATION IS TO OFFER YOU LOSS MITIGATION ASSISTANCE THAT MAY HELP YOU BRING OR KEEP YOUR LOAN CURRENT THROUGH AFFORDABLE PAYMENTS. IF YOU ARE CURRENTLY IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY OBTAINED A DISCHARGE OF THIS DEBT UNDER APPLICABLE BANKRUPTCY LAW, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT THE DEBT, A DEMAND FOR PAYMENT OR AN ATTEMPT TO IMPOSE PERSONAL LIABILITY FOR THAT DEBT. YOU ARE NOT OBLIGATED TO DISCUSS YOUR HOME LOAN WITH US OR ENTER INTO A LOAN MODIFICATION OR OTHER LOAN-ASSISTANCE PROGRAM. YOU SHOULD CONSULT WITH YOUR BANKRUPTCY ATTORNEY OR OTHER ADVISOR ABOUT YOUR LEGAL RIGHTS AND OPTIONS. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**

**Federal ECOA Notice**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC, 20552.

**Important Notice To Servicemembers And Their Dependents**
If you or any occupant of your home are or recently were on active duty or active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law or investor policy. SCRA and state Military benefits and protections also may be available if you are the dependent of an eligible Servicemember.

Eligible service may include:
- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration, or
- Active service as a commissioned officer of the Public Health Service, or
- Service with the forces of a nation with which the United States is allied in a war or Military action, or
- Service with the National Guard of a state militia under a state call of duty, or
- Any period when you are absent from duty because of sickness, wounds, leave, or other lawful cause.

For more information, please call SLS at 1-800-306-6059.

Setting the Standard

www.sls.net



8742 Lucent Boulevard « Suite 300 » Highlands Ranch, CO 80129

☎ 800-306-6059
📠 720-241-7526

**FCRA Disclosure**

Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below.  You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agencies.  The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.  You have a right to receive a free copy of your report from these reporting agencies, if you request it no later than 60 days after you receive this notice.  In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the applicable reporting agency by contacting that agency at the number provided below:

Equifax:  P.O. Box 740241
Atlanta, GA  30374-0241
1-800-685-1111

We also obtained your credit scores from the consumer reporting agencies and used them in making our credit decision. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: 606
Date: 4/9/2014

Scores range from a low of 280 to a high of 850.

Setting the Standard
www.sls.net

 **SLS**

8742 Lucent Boulevard • Suite 300 • Highlands Ranch, CO 80129   ☎ 800-306-6059   📠 720-241-7526

## Foreclosure Prevention Change of Intent Form

RE: Loan Number: 1005506474

If you would like to be considered for other foreclosure prevention options and are willing to change your intent with the property, please mark your new intent with the subject property below (Please only select one):

| Intent Selection (SELECT ONE) | Description | Additional Detail |
|---|---|---|
| ☐ I would like to keep the property. I no longer wish to sell the property or complete a deed-in-lieu of foreclosure. | **Retain Property:** Options may include a repayment plan to pay back your past due payments or modification to create a more affordable payment. | No other documents will be required if all income documents provided are valid and dated within 90 days. We will notify you if your documentation has become outdated or if we need additional information. |
| ☐ I would like to sell my home. I no longer wish to keep the property or complete a deed-in-lieu of foreclosure. | **Short Sale:** Sell your home and pay off a portion of your mortgage balance when you owe more on the home than it is worth. | By selecting this option you will need to provide the following documentation in order to consider the request:<br>• Valid Listing Agreement<br>• A market value offer and documentation to support the offer, including; Executed Sales Contract, Proposed HUD-1 and Buyer Proof of Funds or Qualification.<br>• Access for an interior valuation.<br>• You may also be required to provide offer approval from any additional lien holders on the property, where applicable. |
| ☐ I would like to deed my property back to the investor. I no longer wish to sell the property or keep the property. | **Deed-In-Lieu:** Transfer the ownership of your property to us. | By selecting this option we will need to obtain the following in order for us to consider the request:<br>• Clear and Marketable Title.<br>• Access for an interior inspection. |

Borrower Signature: _____   Date: _____

Please return this completed and signed form via one of the following:

| Mail | Fax | Secure Email | Secure Web |
|---|---|---|---|
| 8742 Lucent Blvd, Suite 300 Highlands Ranch, CO 80129 | 1-720-241-7526 (Page limit per transmission is 25 pages) | crdocs@sls.net | www.sls.net |

This form and any supporting documentation must be submitted at least 37 days before a scheduled foreclosure sale to be considered.



8742 Lucent Boulevard ▸ Suite 300 ▸ Highlands Ranch, CO 80129        ☎ 800-306-6059
                                                                      📠 720-241-7526

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

October 21, 2014                           Re: Loan Number: 1005506474

MARLENE Y BAILEY                           Property Address:
480 E BOGERT TRL                           480 E BOGERT TRL
PALM SPRINGS, CA 92264                     PALM SPRINGS, CA 92264

Dear MARLENE Y BAILEY

Attached please find the Trial Period Modification Plan discussed between you and/or your authorized agent and Specialized Loan Servicing LLC ("SLS"). To accept this offer, you must make new monthly "trial period payments." To qualify for a permanent modification, you must make the trial period payments in a timely manner.

**Please follow these procedures:**

- Mail your initial payment of $4,033.23 in the form of a cashier's check made payable to: Specialized Loan Servicing LLC, 8742 Lucent Blvd. Suite 300 Highlands Ranch, CO 80129

  OR

- Send your initial payment of $4,033.23 via Western Union using the blue form with the following: 1. Biller Name 2. Account number 3. Total amount due.
  *Western Union may charge a fee for this service.

The initial payment must be received in our office no later than December 1, 2014. Your failure to return by December 1, 2014 will result in SLS rescinding our Trial Period Modification Plan offer.

**Next Steps**

- It is important that you thoroughly review the *Frequently Asked Questions, Additional Trial Period Plan Information and Notices* information attached.

- Once you have successfully made each of the payments above by their due dates, you have submitted two signed copies of your modification agreement, and we have signed the modification agreement, your mortgage will be permanently modified in accordance with the terms of your modification agreement.

- **We must receive each payment, in the month in which it is due. If you miss a payment or do not fulfill any other terms of your trial period, this offer will end and your mortgage loan will not be modified.**

- If you feel that you cannot afford the trial period payments shown above but want to remain in your home, or if you have decided to leave your home, please contact us at 1-800-306-6059.

---

**Setting the Standard**
www.sls.net



8742 Lucent Boulevard ~ Suite 300 ~ Highlands Ranch, CO 80129

☎ 800-306-6059
📠 720-241-7526

**FREQUENTLY ASKED QUESTIONS**   *Get the answers you need to some of the most common questions.*

Q.    **What else should I know about this offer?**

- Your state Housing Finance Agency ("HFA") may be participating in a program using federal Hardest Hit Funds to assist qualified homeowners to pay down a portion of the unpaid principal balance of their mortgage loans (HFA Program). If you are eligible and qualify for the HFA Program and you make your trial period payments on time, upon our receipt of the HFA Funds, we will apply such funds to the amount you owe on your mortgage loan. If we do not receive the HFA Funds and you otherwise qualify for the modification, we may still offer you a modification.**There could be income tax consequences related to payment of your debt obligation by a third party. As a result, you are advised to seek guidance from a tax professional to discuss potential tax consequences.**

- If you make your new trial period payments timely we will not conduct a **foreclosure sale.**

- You will not be charged any fees for this Trial Period Plan or a permanent modification.

- If your loan is modified, we will waive all unpaid late charges.

- **Credit Reporting:** We will continue to report the delinquency status of your loan to credit reporting agencies as well as your entry into a Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. **CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK. AS A RESULT, ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE CURRENT ON YOUR MORTGAGE OR OTHERWISE HAVE A GOOD CREDIT SCORE.** For more information about your credit score, go to ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

Q.    **Why is there a trial period?**

The trial period offers you immediate payment relief and gives you time to make sure you can manage the new monthly mortgage payment. The trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period.

**Setting the Standard**
www.sls.net



6742 Lucent Boulevard × Suite 300 × Highlands Ranch, CO 80129

☏ 800-306-6059
🖷 720-241-7526

**Q.**   **When will I know if my loan can be modified permanently and how will the modified loan balance be determined?**

Once you make all of your trial period payments on time and return to us two copies of a modification agreement with your signature, we will sign one copy and send it back to you so that you will have a fully executed modification agreement detailing the terms of the modified loan. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment.

If you are eligible and qualify for the HFA Program, after making all of your trial period payments on time, and upon our receipt of the HFA Funds, we will apply such funds first to reduce accrued and unpaid interest on your mortgage loan and any other past due amounts advanced by us under the terms of the mortgage, then to pay down a portion of the unpaid principal balance of the mortgage loan.

**Q.**   **Are there incentives that I may qualify for if I am current with my new payments?**

No. Borrower incentive compensation is only available to borrowers who qualified for a permanent modification under the federal Home Affordable Modification Program (HAMP).

**Q.**   **Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**

Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage. Your new monthly payment will include an escrow for property taxes, hazard insurance and other escrowed expenses. If the cost of your homeowners insurance, property tax assessment or other escrowed expenses increases, your monthly payment will increase as well.

---

**Setting the Standard**
www.sls.net



8742 Lucent Boulevard – Suite 300 – Highlands Ranch, CO 80129        ☎ 800-306-6059
                                                                     ⓕ 720-241-7526

**Additional Trial Period Plan Information and Notices**

**We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the Trial Period Plan:**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the plan or do not qualify for a permanent modification.

**If your monthly payment did not include escrows for taxes and insurance, you are now required to do so:**

- You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.

Please note that except for your monthly mortgage payment amount during the trial period, the terms of your existing note and all mortgage requirements remain in effect and unchanged during the trial period. You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

If you have questions concerning this letter or need further assistance, you may contact me or our Customer Resolution Department at 1-800-306-6059 Monday through Friday, 6:00 a.m. until 9:00 p.m. MT. Saturday 6:00 a.m. until 12:00 p.m. MT.

Sincerely,

Justin ,#10367
Customer Resolution Department
Specialized Loan Servicing LLC

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT OUR CUSTOMER CARE CENTER AT 1-800-306-6057.

**Setting the Standard**
www.sls.net



8742 Lucent Boulevard - Suite 300 - Highlands Ranch, CO 80129

☎ 800-306-6059
☏ 720-241-7526

Re:  Loan Number:          1005506474

Property Address:          480 E BOGERT TRL
                           PALM SPRINGS, CA 92264

MARLENE Y BAILEY

## TRIAL PERIOD PLAN

If I am in compliance with this Trial Period Plan (the "Plan") and my representations as provided in the hardship letter and financial information package continue to be true in all material respects, then Specialized Loan Servicing LLC will provide me with a Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this document and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer").

1.      Borrower Representations. I certify and represent to SLS and agree:

A.      I am unable to afford my mortgage payments for the reasons indicated in my Hardship Letter and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.      The Property has not been condemned;

C.      There has been no change in the ownership of the Property since I signed the Loan Documents;

D.      I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

E.      Under penalty of perjury, all documents and information I have provided to SLS pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct, and

F.      If SLS requires me to obtain credit counseling, I will do so.

**Setting the Standard**
www.sls.net



8742 Lucent Boulevard » Suite 300 » Highlands Ranch, CO 80129

☏ 800-306-6059
🖷 720-241-7526

2.    The Trial Period Plan. On or before each of the following due dates, I will pay SLS the amount set forth below ("Trial Period Payment"), which may include payment for Escrow items, including real estate taxes, insurance premiums and other fees due and payable on my loan.

| Trial Period Payment # | Trial Period Payment Amount | Due Date - On or before |
|---|---|---|
| 1 | $4,033.23 | December 1, 2014 |
| 2 | $4,033.23 | January 1, 2015 |
| 3 | $4,033.23 | February 1, 2015 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

*I understand that my first payment must be received by the Lender no later than December 1, 2014 or I may not be accepted into the Trial Period Modification Plan.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and Ending on the earlier of (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.    TIME IS OF THE ESSENCE under the Plan. This means I must make all payments on or before the days they are due;

B.    Except as set forth in Section 2.C. below, SLS will suspend any scheduled foreclosure sale, provided I continue to meet my obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately be resumed at the point at which it was suspended if this Plan terminated.

C.    If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and SLS may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. If a foreclosure sale occurs pursuant to this Section 2.C., this Plan shall be deemed terminated;

D.    SLS will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand SLS will not pay me interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by SLS and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full.

E.    When SLS accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

---

Setting the Standard
www.sls.net



8742 Lucent Boulevard • Suite 300 • Highlands Ranch, CO 80129

☎ 800-306-6059
📠 720-241-7526

F.    If prior to the Modification Effective Date, (i) SLS does not provide me a fully executed copy of the modification Agreement; (ii) I have not made all of the Trial Period Payments as required under Section 2 of this Plan; or (iii) SLS determines that my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period. In this event, SLS will have all of the rights and remedies provided for in the Loan Documents, and any payments I have made under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G.    I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I received a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that SLS will not be obligated or bound to make any modification to the Loan Documents if I fail to meet any one of the requirements under this Plan. If, under SLS procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/or subordination agreement(s) from other lien holders, as SLS determines necessary.

3.    **The Modification.** I understand that once SLS is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, SLS will determine the new payment amount. If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide SLS with all required information and documentation; and (4) SLS determines that I qualify, SLS will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both SLS and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e., on the first day of the month following the month in which the last Trial Period Payment is due).

4.    **Additional Agreement.** I agree to the following:

A.    To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments the amount of which may change periodically over the term of my loan.



8742 Lucent Boulevard • Suite 300 • Highlands Ranch, CO 80129

☏ 800-306-6059
📠 720-241-7526

B.   If SLS may establish an escrow account under applicable law, this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, SLS will include provisions in my Modification Agreement that are similar to the escrow account provisions for the state in which I live.

C.   That all terms and provision of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. SLS and I will be bound by, and will comply with, all of the terms and provision of the Loan Documents.

D.   That SLS will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, and information about account balances and activity.

E.   That, as of the Trial Period Plan Effective Date, I understand that SLS will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

# EXHIBIT B



THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Loan Number: 1005506474
    MARLENE Y BAILEY
480 E BOGERT TRL, PALM SPRINGS, CA 92264

Property Address:  480 E BOGERT TRL , PALM SPRINGS, CALIFORNIA 92264

Specialized Loan Servicing LLC (SLS)
8742 Lucent Blvd, Ste 300, Highlands Ranch, CO 80129
Phone: 1-800-306-6059

Dear MARLENE Y BAILEY,

Congratulations! You are eligible for a Modification Program. There are tremendous benefits of a loan modification, some of which may include a lower or fixed interest rate and a lower monthly payment, which will result in a current loan status.

Additionally, an escrow account for payment of real estate taxes and insurance premiums may be required in conjunction with your loan modification. If required, an estimated monthly escrow amount is included below. The initial estimated amount is calculated based upon the tax and insurance information obtained while in the modification process, and may change. An escrow analysis statement referencing the actual payment and effective date will be mailed to you within four weeks of the modification being completed. SLS will draw on the escrow account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that SLS must place in escrow will also adjust, as permitted by law. This means that your monthly payment may change. An analysis of this account will be performed annually.

Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $6,899.88. You may pay this amount over a 5-year (60 months) period. If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.

How to accept this offer:

STEP 1   COMPLETE AND RETURN THE ENCLOSED AGREEMENT BY THE DUE DATE

To accept this offer, you must sign and return both originals of the Modification Agreement to us in the enclosed, pre-paid envelope by February 28, 2015. If the Modification Agreement has notary provisions at the end or attached, you must sign both original Modification Agreements before a notary public and return the notarized originals to us. We encourage you to make a copy of all documents for your records. If you do not send both signed originals of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

You may wish to consult your attorney or financial advisor to review the terms of the modification; we encourage you to return it to us as soon as possible. Please contact us at 1-800-306-6059 if you have any questions.

As a result of this Modification Offer, debt under your Mortgage Note may have/has been forgiven and there may be tax consequences to you. Please consult your tax advisor.

**STEP 2  CONTINUE TO MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Be certain to make any remaining trial period payments on or before the dates they are due. If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified.

To better understand the proposed terms of your modified mortgage, please read the attached summary of your modified mortgage and the Modification Agreement.

Sincerely,

Loan Resolution Department
Specialized Loan Servicing LLC (SLS)
8742 Lucent Blvd, Ste 300
Highlands Ranch, CO, 80129
Ph: 1-800-306-6059
Fax: 1-720-241-7526

**In accordance with the Fair Debt Collection Practices Act, you are hereby given notice of the following:**

Please be advised that we are attempting to collect a debt and any information obtained will be used for that purpose. Calls will be monitored and recorded for quality assurance purposes. If you do not wish for your call to be recorded, please notify the Customer Assistance Associate when calling.

Please be advised that if the Agreement is altered in any way that the modification agreement will be rejected and the offer to modify your mortgage loan will be voided. All terms of the original Note and Deed of Trust will be immediately effective, including any default status of the loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt, please be advised this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy. If you have questions, please contact our Customer Care Center at 1-800-306-6057.

Date:   February 12, 2015

| Summary | Here's a summary of your modified mortgage. |
|---------|---------------------------------------------|

**DEFERRAL OF PRINCIPAL.** To further reduce your mortgage payment, we may defer collection of and not collect interest on $339,000.00 of your outstanding principal. You will not be required to make monthly payments on that portion. This portion of principal will be due when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due.

**PREVIOUSLY DEFERRED PRINCIPAL: $0.00**

**PRINCIPAL FORGIVENESS.** To further reduce your mortgage payment, we may forgive a portion of your outstanding principal equal to $0.00. You will never be required to repay this amount. However, there could be income tax consequences related to this forgiveness, and you should consult a tax advisor.

**CASH CONTRIBUTION: $0.00**

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. The initial estimated amount is calculated based upon the tax and insurance information obtained while in the modification process, and may change. An escrow analysis statement referencing the actual payment and effective date will be mailed to you within four weeks of the modification being completed. Specialized Loan Servicing LLC (SLS) will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Specialized Loan Servicing LLC (SLS) must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment is estimated to be $1,056.55.

**ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there is a shortage of funds in your escrow account in the amount of $6,899.88. You may pay this amount over a 5-year ( 60 months) period. If you wish to pay the total shortage now in a lump sum, please contact us. Paying this amount now in a lump sum will reduce your new monthly mortgage payment.

**FEES.** There is a Modification Fee of $0.00

**TOTAL PAYMENT.** The enclosed Modification Agreement includes a principal and interest payment of $2,968.61 , for a total payment of $ 4,025.16 to include your estimated escrow amount. Please remit your total payment plus fees in certified funds.

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. In addition, your mortgage insurance premium may increase as a result of the higher mortgage loan balance. If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.

**INTEREST RATE.** The interest rate on your modified loan may be adjusted as noted in the attached Modification Agreement.

**TERM EXTENSION.** To reduce your mortgage payment, we may extend the term of your mortgage. This means we will spread your payments over a longer period.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1-800-306-6059.

Please be advised that if the Agreement is altered in any way that the modification agreement will be rejected and the offer to modify your mortgage loan will be voided. All terms of the original Note and Deed of Trust will be immediately effective, including any default status of the loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt, please be advised this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy. If you have questions, please contact our Customer Care Center at 1-800-306-6057.



MARLENE Y BAILEY
480 E BOGERT TRL
PALM SPRINGS, CA 92264

Attached please find your documents from Specialized Loan Servicing LLC (SLS). If you have any questions concerning these documents, please call us at 1-800-306-6059 and speak with the first available agent. Thank you for your consideration.

8742 Lucent Blvd, Ste 300  Highlands Ranch, CO  80129
Ph:  1-800-306-6059 Fax:  1-720-241-7526

Page 1 of 1
SLS Instruction Sheet
SigniaDocs, Inc. 2010

Loan No. 1005506474        Investor #: 5027
Investor Loan #: 127620452
Borrower:  MARLENE Y BAILEY

# LOAN MODIFICATION AGREEMENT
## On Balloon Mortgage Adjustable to Fixed Interest Rate

This Loan Modification Agreement ("Agreement"), made this 12th day of February, 2015 , between MARLENE Y BAILEY ("Borrower") and  Specialized Loan Servicing LLC, as servicer for the current Note Holder ("Servicer"),  amends and supplements (1) the Mortgage, Deed of Trust or Security Deed  (the "Security Instrument"), dated  May  19,  2006  and recorded in  RIVERSIDE  county, CALIFORNIA  in which the property is located, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 480 E BOGERT TRL , PALM SPRINGS, CALIFORNIA 92264, the real property described being set forth as follows:

See Legal description referenced in the original security instrument.

For purposes of this Agreement, unless the context clearly requires otherwise, all capitalized terms which are used but not otherwise defined herein shall have the respective meanings assigned to such terms in the Note or Security Instrument.

In consideration of the mutual promises and agreements exchanged, Servicer and Borrower agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.   As of February 1, 2015, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $812,743.42. Effective February 1, 2015 the Modified Principal Balance will be $751,694.13 (the "Modified Principal Balance"). The amount capitalized is $277,950.71 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

   (a)   Unpaid Interest:  $151,855.88
   (b)   Escrow Advances: $90,822.17
   (c)   Corporate Advances: $35,272.66

2.   The amount to be written off is $ 0.00  consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

   (a)   Principal Balance: $0.00
   (b)   Unpaid Interest: $0.00
   (c)   Corporate Advances: $0.00
   (d)   Late Charges: $0.00

3.   The amount deferred through this modification agreement is $ 339,000.00 consisting of the amount(s) loaned to Borrower by the current or previous Note Holder and any interest capitalized to date, with a breakdown as follows:

   (a)   Unpaid Interest: $0.00
   (b)   Corporate Advances: $0.00
   (c)   Principal: $339,000.00

4.    Additionally, the amount of items deferred in previous modification(s) on this loan is $0.00, with a breakdown as follows:

      (a) Prior deferred interest:   $0.00
      (b) Prior deferred principal:  $ 0.00

Deferred Items: The portion of the outstanding principal balance, corporate advances and/or unpaid interest that is referenced above has been deferred. The deferred amount will not accrue interest. The deferred amount will remain due and owing but is not required to be paid until the loan is paid in full or if not sooner paid, on the Maturity Date or Modified Maturity Date. The deferred amount is not a forgiveness of partial debt and will not be reported as such.

5.    Monthly Payments and Modified Maturity Date.  Borrower promises to pay the Modified Unpaid Principal Balance, plus interest, to the order of the Note Holder. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.625%, from February 1, 2015.

    Borrower promises to make monthly payments of principal and interest of U.S. $ 2,968.61 beginning on March 1, 2015, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.


    In conjunction with this Modification, a Balloon Maturity Date has been added or changed.


    If on August 25, 2046, ('Balloon' or 'Modified Balloon Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Balloon Maturity Date.

6.  Place of Payment.  Borrower will make such payments at:  P.O. Box 105219, Atlanta, GA 30348-5219 Attn: Remittance Processing or at such other place as the Note Holder may require.

7.    Intentionally left blank.

8.    Compliance and Covenants.  Borrower will also comply with all other covenants, agreements, and requirements of the Security Instrument, including, without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and other payments that Borrower is obligated to make under the terms of the Security Instrument. The original loan documents may have included Riders for unique ARM, Interest Only and Conversion features. The Rider terms and features remain in effect unless otherwise modified by this Agreement.

9.    Corrections and Omissions.  Borrower agrees to execute such other and further documents as may be reasonably necessary to consummate the transaction contemplated herein or to perfect the lien and security interest intended to secure the payment of the loan evidenced by the Note.

10.    Agreement is Binding.  This Agreement, when executed, shall be binding and inure to the heirs, executors, administrators and assigns of Borrower.

11.    In the event Borrower's personal liability under the Note has been discharged in a Chapter 7 Bankruptcy, notwithstanding anything in this Agreement to the contrary, including, without limitation the provisions in the proceeding paragraph, Borrower and Note Holder acknowledge and agree that Borrower's personal liability under the Note has been discharged in a Chapter 7 Bankruptcy and that this Agreement shall not be construed as: (1) an attempt by Note Holder to collect the underlying debt from Borrower's personal assets; and/or (2) as a violation of the post-discharge injunction set forth in the 11 U.S.C. Section 524. On the contrary, Borrower and Note Holder desire to modify the underlying loan terms in order to facilitate Borrower's full compliance with the terms of the Note and Security Instrument.

12.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Note Holder will be bound by, and comply with, all the terms and provisions thereof, as amended by this Agreement.

13.   Property Transfer.   If all or any part of the Property or any interest in the Property is sold or transferred without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with the terms of the Security Instrument, within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice to or demand on Borrower.

In Witness Whereof, Servicer and Borrower have executed this Agreement.

_____        Date: _____
MARLENE Y BAILEY


Specialized Loan Servicing LLC
As Servicer
By: _____
Name: _____
Title: _____
Date: _____

# EXHIBIT C

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, California 92264
(760) 325-1877
(760) 406-4234 Fax
e-mail: mbailey@hollyhhills.com



## TELECOPIER TRANSMITTAL SHEET

SEND TO FAX NUMBER: _720 - 241 - 7526_

TO: _SLS — Loss Mitigation_

COMPANY: _SLS_

* * *

FROM: _Marlene Bailey_

DATE: _2/26/2015_   NO. OF PAGES _3_
(Not including this cover page)

COMMENTS: _Loan # 1005506474 / TS# 9462 0812_
_Please see the attached + acknowledge receipt._
_Thank You_

Should you have any questions regarding this fax, please call (760) 325-1877.

46

February 25, 2015

SLS Loan # 1005506474

RE: Marlene Y Bailey
480 Bogert Trail, Palm Springs, CA 92264

## URGENT ATTENTION

### FINAL MOD DOC ERRORS & CONCERNS

Sir/Madam,

As ATP (Authorized Third Party) and a seasoned Mortgage Professional, I have some concerns regarding the final modification documentation that was sent to the borrower. There seems to be a number of errors, nondisclosures and/or areas of concern in the documentation and must be addressed ASAP.

As a result of the below outlined concerns it may be necessary to extend the due date on the documentation of February 26, 2015. We hereby request that you extend the trial payment plan until the below errors, nondisclosures and/or areas of concern are addressed. As a sign of good faith we will send the March 1, 2015, cashier check in the amount of $4,033.23 for the "Forth" Trial Payment on or before March 1, 2015.

### ERRORS, NONDISCLOSURES & CONCERNS:

1. In the "Congratulations" cover letter of February 12, 2015 (date assumed given referenced cover letter was not dated) that accompanied the modification, it states that there is an Escrow Shortage in the amount of $6,899.88 and that you will collect this amount interest free over 60 months. However, there is no indication that said shortage was included in the proposed monthly P.I.T.I. payment of $4,025.16 or the proposed impound payment of $1,066.56. The amount of the shortage would constitute an additional $115.00 per month. If the shortage has not been included in the proposed impound payment, the letter should provide disclosure that it is not included. If the shortage has been included in the proposed impound payment, the letter should provide disclosure that it is included. Furthermore, it is unclear as to what the shortage represents. In the "Summary" page under the heading of "Escrow Account" it states that SLS will provide an Escrow Analysis within four weeks of the modification being completed. In order for SLS to determine an escrow shortage of $6,899.88 an escrow analysis must have been completed and therefore no time delayed should be asserted. Our concern is that the monthly P.I.T.I. payment will increase substantially due to your nondisclosure of the analysis at this time and possible

1

accounting error? That being said the absence of this analysis and/or full disclosure becomes an area of concern as it relates to the ultimate affordability of this new monthly P.I.T.I. payment. We hereby request a copy of the analysis used to determine a $6,899.88 shortage as well as full disclosure as to what is being paid in the proposed monthly escrow payment of $1,056.55.

2. In the "Summary" page under the heading of "Escrow Account" you state that the initial monthly escrow payment would include property taxes and insurance premiums. There is no mention of the land lease recorded against the subject property. SLS, and/or the prior servicer B of A, have been paying the land lease shortage for several years. Full disclosure of this obligation is therefore substantiated. As such, this item should be included in the Escrow Account. The current obligations of the property taxes, land lease and insurance premiums, when collected monthly, equal $1,517.91. This does not include the suggested shortage repayment of $115.00. All of the required escrow collections would total $1,632.91. Clearly a collection of $1,056.55 would not be sufficient and therefore the escrow payment would require a minimum increase of $576.36 per month. This is a substantial increase in monthly payment and underwriting debt ratios resulting in an addition hardship of unaffordability for the borrower.

3. SLS received an appraisal on the subject property of $770,000. The total amount owing is $1,090,594.13, plus the escrow shortage. Given the property is upside down with the debt, why was zero Principal Forgiveness considered in the modification review? The SLS NPV decline of July 21, 2014 stated that the National Mortgage Settlement principal forgiveness program was "Not in the best interests of the investor". This was based on a declined workout. Once we sent in the "Change of Circumstance" RMA of August 20, 2014, you were able to approve the borrower for a trial and subsequent modification. Now that we have completed the Trial and received an Approved Modification why would it not be in the best interest of the investor to take advantage of the National Mortgage Settlement Program when the subject property is $300,000+ upside down?

4. One page one of three, "Item 1b" states that there were "Escrow Advances" in the amount of $90,622.17. In order for this to be accurate the land lease payments would have to be included in said advances. Given the land lease does not seem to be considered in the monthly escrow collection (as stated above) we request a detailed disclosure of what items were paid in said "Escrow Advances".

5. One page one of three, "Item 1c" states that there were "Corporate Advances" in the amount of $35,272.55. This is a substantial amount of money in Corporate Advances. We request a detailed disclosure of what items were paid and subsequently charged to the borrower in this category.

2

6. One page one of three, "Item 5" (all paragraphs) states that beginning March 1, 2015, the borrower will make monthly principal and interest payments in the amount of $2,968.61 until the principal and interest are paid in full. This will not be possible if the maturity date of the loan is August 25, 2046 as there would be an outstanding balance of $260,257.00 (approx.). In order for the modified loan to self-terminate as stated in paragraph two, the maturity date would need to be extended to February 1, 2055. The maturity date of August 25, 2046 is only 366 months out, yet the amortization of the new modified loan is 480 months. Why is SLS not extending the maturity date to February 1, 2055? Why is SLS giving reference to a self-terminating loan when that is not possible without extending the maturity date? Additional, if this does end up having a balloon feature in 2046, why is there not a Balloon Rider or Full Disclosure about this feature? Your bracketed "Balloon" or "Modified Balloon Date" is NOT a disclosure. To the average reader this could be misconstrued as the deferred principal balloon outlined in the "Summary". Assuming this is not a typo, I would be inclined to define this lack of disclosure and/or verbiage as misleading, a potential RESPA violation and borderline predatory lending. If there is no typo error in the maturity date of August 25, 2046, the balloon feature will require a FULL DISCLOSURE.

7. Assuming the "Advances" in "Item 1a" are correct, in order to accomplish the "Approved Monthly P.I.T.I. Modified Payment of $4,025.16, SLS would need to recalculate the monthly payment using the "Correct" monthly Escrow collection, of which they have full knowledge of, in the amount of $1,632.91 (approximately), keep the current amortization of 480 months and lower the Principal and Interest payment to $2,392.25. This could be accomplished by lowering the Modified Principal Balance, Enlarging the Deferred Principal Balance, Forgiveness of Debt or by lowering the fixed interest rate from 3.625% to 2.289%.

In closing, the borrower DOES DESIRE to accept a Final Loan Modification offer from SLS but the documents must be correct and full disclosure provided before they can be committed to and signed in the presence of a notary.

The Borrower is prepared to continue making Trail Payments until such time as SLS has had an opportunity to audit and/or make the necessary corrections to the final loan modification documents of February 12, 2015.

I thank you for your prompt attention and response to the above "Errors, Nondisclosures & Concerns".

Ms. Kenia Bruns -ATP

760-798-2656 – PST – 310 S. Twin Oaks Valley Road, Suite 107-379, San Marcos, CA 92078

3

**Last Transmission**                                    **Feb.26.2015   09:23 AM**

Name   :

,1        :

---

| Date | Time | Type | ID | Duration | Pages | Result |
|------|------|------|-----|----------|-------|--------|
| Feb.26 | 09:21AM | Send | 17202417526 | 02:13 | 4 | OK |

# EXHIBIT D

Branch :F41,User :AT06                    Comment:                              Station Id :VWXU

RECORDING REQUESTED BY:
CHICAGO TITLE COMPANY

DOC # 2006-0418627
08/08/2006 08:00A Fee:114.00
Page 1 of 36
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

AND WHEN RECORDED MAIL TO:

COUNTRYWIDE HOME LOANS, INC.
MS SV 79 DOCUMENT PROCESSING
P.O. BOX 10423
VAN NUYS, CA. 91410-0423

ORDER NO: 607048973-F03

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|----|------|-----|-----|
|   |   |   | 36   |      | 1  |      |       |     |     |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

APN:

TRA:

DEED OF TRUST
—————————————————————————
TITLE OF DOCUMENT

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION

($3.00 ADDITIONAL RECORDING FEE APPLIES)

Branch :F41,User :AT06                    Comment:                              Station Id :VWXU



# APPROVAL OF DEED OF TRUST

584 15051 4708
RECEIVED
BUREAU OF INDIAN AFFAIRS
2006 JUN -5 AM 10: 45
OFFICE

This Deed of Trust, with Note, both dated, 5/19/2006, for sublease covering property described therein as Unit No. —, Lot 19, of Tract No. 16149, under Master Lease No. PSL-47, naming as Trustor:

## MARLENE Y BAILEY, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

is hereby approved as an encumbrance on said leasehold interest only. This approval in no way abrogates any of the terms of said Master Lease, Business Lease, Sublease, or Lease, as amended or supplemented.

This approval is given with the understanding that in the event a sale or foreclosure occurs under this encumbrance and the Beneficiary thereof purchases the Leasehold estate, said purchaser will be bound by all the terms of the Master Lease, Business Lease, Sublease, or Lease, as amended or supplemented, and shall give first priority to rents due Lessor of the Master Lease.

This approval does not extend to any additional monetary advances, changes, modifications, or amendments to the Deed of Trust to which this approval is attached. Any such changes will require further written approval by the Bureau of Indian Affairs and the Lessor.

Regardless of any of the provisions contained in the Deed of Trust to which this approval is attached, the lease governing the leasehold estate may not be modified, supplemented, or amended without the prior written consent of the Bureau of Indian Affairs and the Lessor.

Demand is hereby made that a copy of any Notice of Default and of any Notice of Sale under this Deed of Trust be forwarded to the PALM SPRINGS AGENCY, BUREAU OF INDIAN AFFAIRS, P.O. BOX 2245, PALM SPRINGS, CALIFORNIA 92263, or to such address as may be hereafter designated in writing.

If this is a first Deed of Trust, evidence of reconveyance of any interest held under any previously approved First Deed of Trust encumbering the property described in the Leasehold document cited above is also requested.

This Deed of Trust may require a written Lessor's approval of encumbrance. You are required to contact the Lessor for further information regarding same. Failure to secure this approval may impair your rights in the event of a borrower default. The Lessor information may be obtained by contacting the Lessee/Borrower of subject property.

JUN 0 5 2006
Dated

584-15-08039-06

SUPERINTENDENT
PALM SPRINGS AGENCY
BUREAU OF INDIAN AFFAIRS
Pursuant to the authority delegated by 209 DM 8, 230 BIA 1, and to Part 4 and Sacramento Redelegation Order No. 1 (44 F.R. 50101, dated July 19, 1979).

Branch :F4I,User :AT06                    Comment:                              Station Id :VWXU

Recording Requested By:
R. GRAFFEO



After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
SCOTT MATHES

_____ [Space Above This Line For Recording Data] _____

607048973                          00012762045205006
[Escrow/Closing #]                     [Doc ID #]

# DEED OF TRUST

MIN 1000157-0006612546-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MAY 19, 2006                    , together with all Riders to this document.
(B) "Borrower" is

MARLENE Y BAILEY, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

                                            Page 1 of 16
-6A(CA) (0207)      CHL (08/05)(d)      VMP Mortgage Solutions, Inc. (800)521-7291
CONVVA                                                              Form 3005 1/01





Branch :F41,User :AT06                    Comment:                                    Station Id :VWXU

DOC ID #: 00032762045206006

Borrower's address is
6360 LA PUNTA DRIVE, LOS ANGELES, CA 90068
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
RECONTRUST COMANY, N.A.
225 W BILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MAY 19, 2006          . The
Note states that Borrower owes Lender
SEVEN HUNDRED FIFTY SEVEN THOUSAND and 00/100

Dollars (U.S. $ 757,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JUNE 01, 2036          .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [X] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
|  |  | LEASE HOLD RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

-6A(CA) (0207)          CHL (08/05)          Page 2 of 16                              Form 3005 1/01

Branch :F41,User :AT06                    Comment:                               Station Id :VWXU

DOC ID #: 00012762005205006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                     of                    RIVERSIDE                    :
[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 512270008/009607525                              which currently has the address of
                                480 E BOGERT TRAIL, PALM SPRINGS
                                                    [Street/City]
California 92264-9610  ("Property Address"):
                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)          CHL (08/05)          Page 2 of 16                    Form 3005  1/01

Branch :F41,User :AT06                    Comment:                                        Station Id :VWXU

DOC ID #: 00012762045205006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Branch :F41,User :AT06                     Comment:                                          Station Id :VWXU

DOC ID #: 0001276204520500 6

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)          CHL (08/05)          Page 5 of 16                          Form 3005  1/01

RIVERSIDE,CA
Document: TD 2006.418627

Printed on 7/3/2014 11:56:52 AM

Branch :F41,User :AT06    Comment:        Station Id :VWXU

DOC ID #: 00012762045285006

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)  CHL (08/05)    Page 6 of 16      Form 3005 1/01

Branch :F41,User :AT06                    Comment:                                    Station Id :VWXU

DOC ID #: 00012762043205006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

-6A(CA) (0207)        CHL (08/05)            Page 7 of 16                Form 3005  1/01

Branch :F41,User :AT06     Comment:     Station Id :VWXU

DOC ID #: 00012762045205006

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

-6A(CA) (0207)    CHL (08/05)    Page 8 of 14    Form 3005 1/01

Branch :F41,User :AT06                    Comment:                                    Station ld :VWXU

DOC ID #: 0001276204520500 6

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

-6A(CA) (0207)          CHL (08/05)          Page 9 of 16                    Form 3005  1/01

Branch :F41,User :AT06                    Comment:                                    Station Id :VWXU

DOC ID #: 0001276204520500 6

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

-6A(CA) (0207)        CHL (08/05)         Page 10 of 16                    Form 3005 1/01

Branch :F41,User :AT06                    Comment:                              Station Id :VWXU

DOC ID #: 0001276204520500G

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (08/05)          Page 11 of 18          Form 3005  1/01

Branch :F41,User :AT06                    Comment:                         Station Id :VWXU

DOC ID #: 0001276204 3205 0006

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

-6A(CA) (0207)         CHL (08/05)              Page 12 of 16                    Form 3005  1/01

DOC ID #: 00012762045205006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

-6A(CA) (0207)          CHL (08/05)          Page 15 of 16          Form 3005  1/01

Branch :F41,User :AT06                    Comment:                              Station Id :VWXU

DOC ID #: 00012762045205006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

RIVERSIDE,CA                         Page 16 of 36                 Printed on 7/3/2014 11:56:54 AM
Document: TD 2006.418627

Branch :F41,User :AT06                    Comment:                                      Station Id :VWXU

DOC ID #: 00012762045205006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MARLENE W. RILEY                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

-6A(CA) (0207)        CHL (08/05)         Page 15 of 16                    Form 3005  1/01

Branch :F41,User :AT06    Comment:        Station Id :VWXU

DOC ID # : 00012762045205006

State of California
County of _LOS ANGELES_       } ss.

On _29th MAY, 8ou_ before me, _LAWRENCE CRAIG, notary public_
_MARLENE Y. BATLEY_         personally appeared

_____

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

LAWRENCE CRAIG
Commission # 1387855
Notary Public - California
Riverside County
My Comm Expires Nov 23, 2006

_____ (Seal)

CLC - BA(CA) (0207)  CHL (08/96)  Page 16 of 16    Form 3005  1/01

Branch :F41,User :AT06                    Comment:                                    Station Id :VWXU

PBL-47(A)
Tract No.16149

## EXHIBIT "A"

A LEASEHOLD ESTATE CREATED BY THAT CERTAIN SUBLEASE DATED DECEMBER 10, 1980 , EXECUTED BY   MILNER CORPORATION, A DELAWARE CORPORATION , AS LESSOR, AND RECORDED ON   DECEMBER 31, 1980   AS INSTRUMENT NO.  245481           , OF THE OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, SUBJECT TO THE TERMS, CONDITIONS AND PROVISIONS AS CONTAINED THEREIN. ABOVE SUBLEASE AMENDED BY SUPPLEMENTAL AGREEMENT #1, DATED   JULY 22, 1999            , EXECUTED BY   AGUA CALIENTE DEVELOPMENT AUTHORITY ("ACDA"), AN ENTITY OF THE AGUA CALIENTE BAND OF CAHUILLA INDIANS, A FEDERALLY RECOGNIZED INDIAN TRIBE   , AS LESSOR, AND RECORDED ON   AUGUST 26, 1999  , AS INSTRUMENT NO. 383466          .


LOT NO.   19   OF TRACT NO.   16149    AS SHOWN ON THE MAP THEREOF RECORDED IN BOOK    118        , AT PAGES   3 THRU 8  , INCLUSIVE, OF MAPS, RECORDS OF COUNTY RECORDER, COUNTY OF RIVERSIDE, CALIFORNIA.

Branch :F41,User :AT06                    Comment:                          Station Id :VWXU

# SECOND HOME RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
SCOTT MATHES

607048973                00012762045205006
[Escrow/Closing #]              [Doc ID #]

MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
-365R (0411)   CHL (11/04)(d)        Page 1 of 3                    Initials: 
VMP Mortgage Solutions, Inc. (800)521-7291                        Form 3890  1/01



Branch :F41,User :AT06                        Comment:                              Station Id :VWXU

DOC ID #: 00012762045205006

THIS SECOND HOME RIDER is made the NINETEENTH                      day of
MAY, 2006      , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:
          480 E BOGERT TRAIL, PALM SPRINGS, CA 92264-9610

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and
Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and
are replaced by the following:

6. Occupancy. Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application
process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's
knowledge or consent gave materially false, misleading, or inaccurate information or statements
to Lender (or failed to provide Lender with material information) in connection with the Loan.
Material representations include, but are not limited to, representations concerning Borrower's
occupancy of the Property as Borrower's second home.

-365R (0411)  CHL (11/04)             Page 2 of 3                 Initials: ___
                                                                 Form 3890  1/01

Branch :F41,User :AT06                    Comment:                          Station Id :VWXU

DOC ID #: 00012762045205006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

MARISOL Y. BAILEY                                      (Seal)
                                                      -Borrower

_____                       (Seal)
                                                      -Borrower

_____                       (Seal)
                                                      -Borrower

_____                       (Seal)
                                                      -Borrower

-365R (0411)   CHL (11/04)          Page 3 of 3                    Form 3890  1/01

Branch :F41,User :AT06                     Comment:                          Station Id :VWXU

# LEASEHOLD RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
SCOTT MATHES

607048973                    00012762045205006
[Escrow/Closing #]                [Doc ID #]

MULTISTATE LEASEHOLD RIDER - Single Family                              7/01
-359R (0401)  CHL (06/04)(d)        Page 1 of 3        Initials: 
VMP Mortgage Solutions, Inc. (800)521-7291



Branch :F41,User :AT06                     Comment:                                    Station Id :VWXU

DOC ID #: 00012762045205006

THIS LEASEHOLD RIDER is made this NINETEENTH      day of
MAY, 2006         , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

480 E BOGERT TRAIL, PALM SPRINGS, CA 92264-9610

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and
Lender further covenant and agree that the Security Instrument is amended by adding the following at
the end of Section 9:

Borrower shall not surrender the leasehold estate and interests herein conveyed or
terminate or cancel the ground lease. Borrower shall not, without the express written
consent of the Lender, alter or amend the ground lease.

-369R (0401)  CHL (06/04)              Page 2 of 3

Branch :F41,User :AT06                    Comment:                              Station Id :VWXU

DOC ID #: 000127620452

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Leasehold Rider.

_____ (Seal)
MARLENE Y. BAILEY                                                      - Borrower

_____ (Seal)
                                                                            - Borrower

_____ (Seal)
                                                                            - Borrower

_____ (Seal)
                                                                            · Borrower

-369R (0401)  CHL (06/04)          Page 3 of 3

RIVERSIDE,CA                        Page 25 of 36              Printed on 7/3/2014 11:56:55 AM
Document: TD 2006.418627

Branch :F41,User :AT06                    Comment:                                 Station Id :VWXU

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

607048973                    00012762045205006
[Escrow/Closing #]                [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this  NINETEENTH        day of
MAY, 2006        , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

480 E BOGERT TRAIL
PALM SPRINGS, CA 92264-9610
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:



* PayOption MTA ARM Rider
1E310-XX (08/05)(d)                          Page 1 of 6

Branch :F41,User :AT06                    Comment:                                         Station Id :VWXU

DOC ID #: 0001276204520

## 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of     6.625 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of     1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the *first*            day of JULY, 2006           , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding          TWO & 90/100  percentage point(s) (    2.900 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than     9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month.

\* PayOption MTA ARM Rider
1E310-XX (08/05)                        Page 2 of 6

DOC ID #: 0001276204520006

I will make my monthly payments on the FIRST                    day of each month beginning on July, 2006                    . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 01, 2036                    , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S.$ 2,612.56                    , unless adjusted under Section 3 (F).

(C) Payment Change Dates
My monthly payment may change as required by Section 3(D) below beginning on the first                    day of JULY, 2007                    , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than  7.500%  of my prior monthly payment. This  7.500%  limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number  1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

* PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 3 of 6

DOC ID #: 00012762045205006

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

*PayOption MTA ARM Rider*
1E310-XX (09/05)                          Page 4 of 6

Branch :F41,User :AT06                    Comment:                                         Station Id :VWXU

DOC ID #: 00012762045205006

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

* PayOption MTA ARM Rider
1E310-XX (09/05)                              Page 5 of 6

DOC ID #: 00012762045205006

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ -Borrower
MARLENE L. BAILEY

_____ -Borrower

_____ -Borrower

_____ -Borrower

* PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 6 of 6

Branch :F41,User :AT06                    Comment:                    Station Id :VWXU

## LESSOR'S CONSENT AND APPROVAL TO ENCUMBER

This Deed of Trust with Note both maturing on ___June 1, 2036___, both dated May 15, 2006 for Residential Sub-Lease covering Lot No. ___15___ in Tract No. ___16149___ of PSL-47A in the amount of $ ___757,000.00___, for loan # ___50012782043205006___

naming as Borrower/Trustor: MARLENE Y. BAILEY, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

naming as Beneficiary/Lender: COUNTRYWIDE HOME LOANS, INC.

whose mailing address is: 4500 PARK GRANADA MSN/ SVB: TO-02, CALABASAS, CA 91302-1613

is hereby approved as an encumbrance on said subleasehold interest only and **THIS APPROVAL WILL NOT BE EFFECTIVE UNLESS IT IS ATTACHED TO THE DEED OF TRUST BEING RECORDED**. This approval in no way abrogates any of the terms of said Sublease or Master Lease, as amended. This approval does not extend to any modification, extension, or renewal of this Deed of Trust or underlying Note.

This approval reserves first priority to rents due the lessor(as defined in the sublease)in the event of sale or foreclosure under this encumbrance, and in such event the purchaser will be bound by all of the terms of the sublease and any supplements thereto.

In the event Lessee (as defined in the Sublease) becomes delinquent in ground rent, Lender/Beneficiary(or Assignee) agrees that, within sixty (60) days after service of written notice from Lessor, Lender shall keep and perform all of the covenants, agreements, terms, provisions, and conditions of this Sublease requiring the payment or expenditure of money until such time as the Lender is released by the Lessor or said Deed of Trust is reconveyed. If Lender shall fail or refuse to comply with any and all of the conditions of this paragraph, then and thereupon Lessor may terminate this Sublease because of any default or breach on the part of Lessee.

Request is hereby made that a copy of any Assignment of this Deed of Trust or of any Notice of Default or Notice of Sale under this Deed of Trust be forwarded to FEY'S CANYON FINANCIAL SERVICES, P.O. BOX 2849, Palm Springs, CA 92263 or to such address as maybe hereafter designated in writing.

If this is a First Deed of Trust, evidence of reconveyance of any interest held under any previously approved First Deed of Trust encumbering the property described in the Sublease cited above is also requested.

**MUST BE SIGNED BY TWO OFFICERS, VICE PRESIDENT OR HIGHER**

AGREED TO:      DATED ___MAY 2 3 2006___

LENDER/BENEFICIARY ___COUNTRYWIDE HOME LOANS, INC.___

BY: _____      TITLE __Branch Operations Manager__

BY: _____      TITLE __Branch Manager__

**ALL SIGNATURES MUST BE NOTARIZED**

Dated: ___5-31-06___

Fey's Canyon Financial Services

By: _____
   Agent

PSL-47A /ALL TRACTS WITH SUBLEASE EXTENSION

Branch :F41,User :AT06                    Comment:                              Station Id :VWXU

STATE OF CALIFORNIA                    )
                                       ) SS.
COUNTY OF _Riverside_____              )

On _May 24, 2006_ before me, _Deanne Gillis, Notary Public_
a Notary Public in and for said County and State, personally appeared
_Russell Lomaster_____ and _Denise Gordman_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

_Deanna Gillis_

STATE OF CALIFORNIA                    )
                                       ) SS.
COUNTY OF _Riverside_____              )

On _5/31/06_ before me, _Claudia Wulf_
a Notary Public in and for said County and State, personally appeared _Cheryl Fry_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

_Claudia Wulf_

NOTARY9 – 11/17/94 AM

Branch :F41,User :AT06                    Comment:                         Station Id :VWXU

## LESSOR'S CONSENT AND APPROVAL TO ENCUMBER

This Deed of Trust with Note both maturing on __June 1, 2036__   both dated __May 19, 2006__
for Residential Sub-Lease covering Lot No. __19__   in Tract No. __16149__   of PSL-47A in the
amount of $ __757,000.00__   for loan # __0001276304205006__

    naming as Borrower/Trustor: MARLENE Y. BAILEY, A MARRIED WOMAN AS HER SOLE AND
    SEPARATE PROPERTY
    naming as Beneficiary/Lender: COUNTRYWIDE HOME LOANS, INC.
    whose mailing address is: 4500 PARK GRANADA MSN# SV3-10-02, CALABASAS, CA 91302-1613

is hereby approved as an encumbrance on said subleasehold interest only and **THIS APPROVAL
WILL NOT BE EFFECTIVE UNLESS IT IS ATTACHED TO THE DEED OF TRUST BEING
RECORDED**. This approval in no way abrogates any of the terms of said Sublease or Master Lease,
as amended. This approval does not extend to any modification, extension, or renewal of this
Deed of Trust or underlying Note.

This approval reserves first priority to rents due the lessor(as defined in the sublease)in the event of
sale or foreclosure under this encumbrance, and in such event the purchaser will be bound by all of
the terms of the sublease and any supplements thereto.

In the event Lessee (as defined in the Sublease) becomes delinquent in ground rent,
Lender/Beneficiary(or Assignee) agrees that, within sixty (60) days after service of written notice from
Lessor, Lender shall keep and perform all of the covenants, agreements, terms, provisions, and
conditions of this Sublease requiring the payment or expenditure of money until such time as the
Lender is released by the Lessor or said Deed of Trust is reconveyed. If Lender shall fail or refuse to
comply with any and all of the conditions of this paragraph, then and thereupon Lessor may terminate
this Sublease because of any default or breach on the part of Lessee.

Request is hereby made that a copy of any Assignment of this Deed of Trust or of any Notice of
Default or Notice of Sale under this Deed of Trust be forwarded to FEY'S CANYON FINANCIAL
SERVICES, P.O. BOX 2849, Palm Springs, CA 92263 or to such address as maybe hereafter
designated in writing.

If this is a First Deed of Trust, evidence of reconveyance of any interest held under any previously
approved First Deed of Trust encumbering the property described in the Sublease cited above is also
requested.

### MUST BE SIGNED BY TWO OFFICERS, VICE PRESIDENT OR HIGHER

AGREED TO:    DATED    **MAY 2 3 2006**

LENDER/BENEFICIARY   **COUNTRYWIDE HOME LOANS, INC.**

By: _____    TITLE **Branch Operations Manager**

By: _____    TITLE **Branch Manager**

ALL SIGNATURES MUST BE NOTARIZED

Dated: __5-31-06__

                        Fey's Canyon Financial Services

            CERTIFIED TO BE A TRUE   By: _____
       AND CORRECT COPY OF THE ORIGINAL   Agent
PSL-47A /ALL TRACTS WITH SUBLEASE SIGNED BY TITLE COMPANY

Branch :F41,User :AT06                          Comment:                                    Station Id :VWXU

STATE OF CALIFORNIA                    )
                                       ) SS.
COUNTY OF _Riverside_____            )

On _May 24, 2006_ before me, _Deanna Gillis, Notary Public_
a Notary Public in and for said County and State, personally appeared
_Russell Lamastee____ and _Denise Gordman___

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Deanna Gillis_

[Notary seal: DEANNA GILLIS COMM. #1472431 Notary Public-California SAN BERNARDINO COUNTY My Comm. Exp. Mar 5, 2008]

STATE OF CALIFORNIA                    )
                                       ) SS.
COUNTY OF _Riverside_____            )

On _5/31/06_____ before me, _Claudia Wulf_
a Notary Public in and for said County and State, personally appeared _Cheryl Fry_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Claudia Wulf_

[Notary seal: CLAUDIA WULF Commission # 1492162 Notary Public - California Riverside County My Comm. Expires Jun 24, 2008]

CERTIFIED TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
CHICAGO TITLE COMPANY
NOTARY - 11/17/94 AA
_Kim Bonne_

RIVERSIDE,CA                           Page 35 of 36                     Printed on 7/3/2014 11:56:57 AM
Document: TD 2006.418627

Branch :F41,User :AT06          Comment:                          Station Id :VWXU

DATE:   05/19/2006

PSL:   47          TRACT NO:  16149     LOT NO:     19

                                       UNIT NO:     ---

## NOTICE

THIS DEED OF TRUST MAY REQUIRE A WRITTEN LESSOR'S APPROVAL OF ENCUMBRANCE. YOU ARE REQUIRED TO CONTACT THE LESSOR FOR FURTHER INFORMATION REGARDING SAME. FAILURE TO SECURE THIS APPROVAL MAY IMPAIR YOUR RIGHTS IN THE EVENT OF A BORROWER DEFAULT.

THE LESSOR INFORMATION MAY BE OBTAINED BY CONTACTING THE LESSEE/BORROWER OF SUBJECT PROPERTY.

# EXHIBIT E

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

March 10, 2015

**VIA FEDERAL EXPRESS DELIVERY**

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:   Loan No. 1005506474
      480 E. Bogert Trail, Palm Springs, CA 92264

Dear Sir or Madam:

I am in receipt of your letter dated March 2, 2015 which I just received today, a copy of which is
enclosed. Pursuant to your request, enclosed is our cashier's check for the March 1, 2015, fourth
trial payment.

As you may not be aware, your attorney is having the loan modification documents revised and
we have not yet received them back yet. Upon our receipt and my approval, I will sign and send
them back to you.

Sincerely,

Marlene Bailey

Enclosure

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

March 27, 2015

<u>**VIA FEDERAL EXPRESS DELIVERY**</u>

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:     Loan No.  1005506474
        480 E. Bogert Trail, Palm Springs, CA 92264

Dear Sir or Madam:

Enclosed is our cashier's check for the April 1, 2015, fifth trial payment.

As you may not be aware, your attorney is having the loan modification documents revised
and we have not yet received them back yet. Upon our receipt and my approval, I will sign
and send them back to you.  PLEASE EXPEDITE THIS.

Thank you.

Sincerely,

Marlene Bailey

Enclosure

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

## URGENT & IMMEDIATE ATTENTION
## SALE DATE POSTED FOR
## APRIL 24, 2014 @ 9:30 AM

April 3, 2015

VIA FAX- 720-241-7526

6 Pages

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:            Marlene Bailey
Address:     480 E. Bogert Trail, Palm Springs, CA 92264
TS Sale #    9462-0812
Bank of America Loan # 1005506474

Dear Sir or Madam:

We are into our Fifth month of our Trial Modification and have paid timely as requested.  We have been asking and asking for a status on the revisions to the modification agreement which I am prepared to sign with the errors corrected.  We had also talked with your attorney regarding a settlement of the lawsuit but have yet to hear back from anyone.  Your attorney acknowledged receipt of the changes requested and promised he would get back to us.  We have heard nothing.

This is the third time we have asked for a status of the changes.

Would you please send me the answers to the questions on the First Modification, another copy of that letter is attached?  Or make the two changes requested in conversations between us, your attorney and ours and send us a new draft modification so we can close out this foreclosure.

Your courtesy and cooperation would be greatly appreciated as this is very upsetting that a foreclosure is still pending.

Sincerely,

Marlene Bailey

Enclosure

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

## URGENT & IMMEDIATE ATTENTION

April 30, 2015

*Payment # 6*
*5/1/2015*

**VIA FEDERAL EXPRESS**

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:        Marlene Bailey
Address:   480 E. Bogert Trail, Palm Springs, CA 92264
Bank of America Loan # 1005506474

Dear Sir or Madam:

Enclosed please find my payment for May 1, 2015. We have made six payments and have paid timely as requested. We have been asking for an update over and over again and we keep calling, keep sending requests and nobody returns phone calls or gives us any updates. This has been going on for months now. Please communicate directly with me. You can reach me at 760-325-1877.

Your courtesy and cooperation would be greatly appreciated as this is very upsetting that this never gets solved and foreclosure just lingers after making double the amount of trial payments than requested.

Sincerely,

Marlene Bailey

Enclosures

58

# EXHIBIT F

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

March 10, 2015

**VIA FEDERAL EXPRESS DELIVERY**

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:     Loan No.  1005506474
        480 E. Bogert Trail, Palm Springs, CA 92264

Dear Sir or Madam:

I am in receipt of your letter dated March 2, 2015 which I just received today, a copy of which is enclosed.  Pursuant to your request, enclosed is our cashier's check for the March 1, 2015, fourth trial payment.

As you may not be aware, your attorney is having the loan modification documents revised and we have not yet received them back yet.  Upon our receipt and my approval, I will sign and send them back to you.

Sincerely,

Marlene Bailey

Enclosure



**Marlene Bailey**

| | |
|---|---|
| **From:** | trackingupdates@fedex.com |
| **Sent:** | Wednesday, March 11, 2015 9:42 AM |
| **To:** | Marlene Bailey |
| **Subject:** | FedEx Shipment 773093175996 Delivered |

fedex.com | Ship | Track | Manage | Learn | Office/Print Services

# Your package has been delivered

## Tracking # 773093175996

Ship (P/U) date:
**Tuesday, 3/10/15**

MARLENE BAILEY
Palm Springs, CA 92264
US


Delivered

Delivery date:
**Wednesday, 3/11/15
10:31 AM**

Specialized Loan Servicing LLC

Specialized Loan Servicing LLC
8742 Lucent Blvd Suite 300
Highlands Ranch, CO 80129
US

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 773093175996 |
| Status: | Delivered: 03/11/2015 10:31 AM Signed for By: B.BACKUS |
| Signed for by: | B.BACKUS |
| Delivery location: | Highlands Ranch, CO |
| Delivered to: | Mailroom |
| Service type: | FedEx Standard Overnight |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |
| Special handling/Services: | Deliver Weekday |

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 11:41 AM CDT on 03/11/2015.

1

3/10/2015                                          FedEx Ship Manager - Print Your Label(s)

From: (760) 325-1677          Origin ID: PSPA       Ship Date: 10MAR15
MARLENE BAILEY                                       ActWgt: 0.5 LB
                                                     CAD: 61470529/NET3610
480 E. Bogert Trail
Palm Springs, CA 92264                              Delivery Address Bar Code

SHIP TO: (866) 396-6659       BILL SENDER           Ref #
**Specialized Loan Servicing LLC**                   Invoice #
**Specialized Loan Servicing LLC**                   PO #
**8742 Lucent Blvd**                                 Dept #
**Suite 300**
**Highlands Ranch, CO 80129**

                                                     WED - 11 MAR 3:00P
                                                     STANDARD OVERNIGHT

TRK#  7730 9317 5995                                 80129
0201                                                 CO-US
                                                     DEN
**AG TADA**

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en/PrintIFrame.html                                          1/2

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

March 27, 2015

<u>VIA FEDERAL EXPRESS DELIVERY</u>

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:   Loan No.  1005506474
      480 E. Bogert Trail, Palm Springs, CA 92264

Dear Sir or Madam:

Enclosed is our cashier's check for the April 1, 2015, fifth trial payment.

As you may not be aware, your attorney is having the loan modification documents revised and we have not yet received them back yet.  Upon our receipt and my approval, I will sign and send them back to you.  PLEASE EXPEDITE THIS.

Thank you.

Sincerely,

Marlene Bailey

Enclosure

Cashier's Check - Customer Copy    No. 0952301082

Notice to Purchaser - In the event that this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Void After 90 Days    91-170/1221    Date 03/27/15 01:35:37 PM
NAZ

SMOKE TREE
0004    0001124    010S

Pay    BANK OF AMERICA    FOUR ZERO THREE THREE 23CTS    ***$4,033.23

To The    SPECIALIZED LOAN SERVICING
Order Of

Not-Negotiable
Customer Copy
Retain for your Records
457002931717

Remitter (Purchased By): MARLENE BAILEY

Bank of America, N.A.
PHOENIX, AZ

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

## URGENT & IMMEDIATE ATTENTION

April 30, 2015

*Payment # 6*

*5/1/2015*

**VIA FEDERAL EXPRESS**

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:        Marlene Bailey
Address:   480 E. Bogert Trail, Palm Springs, CA 92264
Bank of America Loan # 1005506474

Dear Sir or Madam:

Enclosed please find my payment for May 1, 2015. We have made six payments and have paid timely as requested. We have been asking for an update over and over again and we keep calling, keep sending requests and nobody returns phone calls or gives us any updates. This has been going on for months now. Please communicate directly with me. You can reach me at 760-325-1877.

Your courtesy and cooperation would be greatly appreciated as this is very upsetting that this never gets solved and foreclosure just lingers after making double the amount of trial payments than requested.

Sincerely,

Marlene Bailey

Enclosures



**Bank of America**

Cashier's Check

No. 0952301378

Pay

To The
Order Of    SPECIALIZED LOAN SERVICING

Remitter Purchased By:  MARLENE HARDY

Bank of America, N.A.
PHOENIX, AZ

Loan # 1005506474

4/30/2015                                FedEx Ship Manager - Print Your Label(s)

From:   (760) 325-1877            Origin ID: PSPA     FedEx.      Ship Date: 30APR15
MARLENE BAILEY                                        Express      ActWgt: 0.5 LB
                                                                  CAD: 9147062/NET3610
460 E. Bogert Trail
                                                                  Delivery Address Bar Code
Palm Springs, CA 92264

SHIP TO:  (866) 385-6053          BILL SENDER         Ref #
                                                     Invoice #
Specialized Loan Servicing LLC                       PO #
8742 Lucent Blvd                                     Dept #
Suite 300
Highlands Ranch, CO 80129                                         FRI - 01 MAY AA
                                                                 STANDARD OVERNIGHT

                                        TRK#   7734 9672 3417                  80129
                                        0201                                    CO-US

                                        AG TADA                                 DEN

After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, CA 92264
(760) 325-1877
(760) 406-4234 Fax
Email: mbailey@hollyhills.com

May 29, 2015

<u>VIA FEDERAL EXPRESS</u>

Specialized Loan Servicing LLC
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129

Re:         Marlene Bailey
Address:    480 E. Bogert Trail, Palm Springs, CA 92264
Bank of America Loan # 1005506474

Dear Sir or Madam:

Enclosed please find my June 1, 2015 payment.

Sincerely,

Marlene Bailey

Enclosures

64



Bank of America 🇺🇸   209-FCL   Cashier's Check   No. 0952301589

Pay ... **$4,033.23**

To The
Order Of   SPECIALIZED LOAN SERVICING

Remitter (Purchased By):   MARLENE BAILEY

Bank of America, N.A.
PHOENIX, AZ

AUTHORIZED SIGNATURE

RECEIVED JUN 01 2015

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

5/29/2015

FedEx Ship Manager - Print Your Label(s)

From: (760) 325-1877
MARLENE BAILEY

480 E. Bogert Trail

Palm Springs, CA 92264

Origin ID: PSPA

**FedEx** Express

Ship Date: 29MAY15
ActWgt: 0.5 LB
CAD: 9147052/INET3610

Delivery Address Bar Code

SHIP TO: (720) 241-7200          BILL SENDER

Specialized Loan Servicing LLC
8742 Lucent Blvd

Highlands Ranch, CO 80129

Ref #
Invoice #
PO #
Dept #

MON - 01 JUN AA
STANDARD OVERNIGHT

TRK#   7737 1703 1373
8211

SC TADA

80129
CO-US
DEN

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT G



8742 Lucent Boulevard • Suite 300 • Highlands Ranch, CO 80129

☎ 800-315-4757
☎ 720-241-7216

May 1, 2015

Marlene Y. Bailey
480 E Bogert Trl
Palm Springs, CA 92264

RE:  Loan Number:  ████6474
Marlene Y. Bailey
480 E Bogert Trl
Palm Springs, CA 92264

Dear Marlene Y. Bailey,

This letter is in response to your client's request dated April 3, 2015 regarding a loan modification request
on the above referenced account.

Our records indicate the enclosed final loan modification was sent to your mailing address on February
13, 2015 and requirements were due by March 1, 2015. However, certified funds were not received
causing the modification to be denied.

Once a loan modification is cancelled, we are unable to re-open the status and must proceed with a re-
evaluation of the loan for a possible new loan modification. Please note that there is no guarantee that
you will qualify for the same loan modification as before or that a new review will yield better terms. If you
have experienced a significant change in financial circumstance and wish to be re-reviewed, please
complete the enclosed worksheet, and forward it to us along with any additional documentation required.

If you wish not to reapply for a new loan modification your other options are a Short Sale, Deed in Lieu, or
Reinstatement. Please contact the number below to discuss your options as we are unable to contact you
due to the Discharge Chapter 7 Bankruptcy.

In researching your account, we have found no errors. You have a right to request the documents relied
upon in reaching this determination by contacting us at the number below, but please note that SLS has
already enclosed the same for your reference as outlined above.

Specialized Loan Servicing LLC ("SLS") is obligated under federal bankruptcy law to comply with the
requirements of the Automatic Stay. This information is provided in response to your request and does
not constitute a demand for payment.

Setting the Standard
www.sls.net



6742 Lucent Boulevard ▪ Suite 300 ▪ Highlands Ranch, CO 80129

📞 800-315-4757
📠 720-241-7216

If you have any questions regarding this information, please contact Customer Care toll free at 1-800-315-4757, Monday through Friday, 6:00 a.m. until 6:00 p.m. MT or TDD 1-800-268-9419, Monday through Friday, 6:00 a.m. until 5:00 p.m. MT. Financial information and other documentation can be forwarded to your Relationship Manager/SPOC by mail, fax, or email as follows: P.O. Box 636005 Littleton, CO 80163, Fax: 1-720-241-7526, Email: CRDocs@sls.net. Please include your ten digit loan number on all correspondence.

Sincerely,

Antoinette, Teller ID 04868
Customer Care Support
Specialized Loan Servicing LLC

Enclosure(s)

**THIS IS FOR INFORMATIONAL PURPOSES ONLY.**

This communication is from a debt collector.

**BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**

Setting the Standard
www.sls.net

# EXHIBIT H

Amount:       $4,033.23
Account:
Bank Number:

Sequence Number: 8692885427
Capture Date:    03/12/2015
Check Number:    0

**Bank of America** 　　　 Cashier's Check 　　　 No. 0952300978

Void After 90 Days

Date 03/10/15 01:43:14 PM

SNICKER TREE
6005   0001136   0136

Pay

To The
Order Of:   SPECIALIZED LOAN SERVICES
           LOAN # 1005506474 4TH PAYMENT MARCH 2015

Remitter (Purchased By): MARLENE Y. BAILEY

Bank of America, N.A.
PHOENIX, AZ

****$4,033.23

AUTHORIZED SIGNATURE

*Loan # 1005506474*
*4th Paid Pymt for 3/1/2015*
*480 Boyet Trail, Perris, CA 92570*

IF  THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.  IE   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.   IE

Electronic Endorsements
Date        Sequence        Bank #    Endrs Type   TRN   RRC   Bank Name
03/12/2015  008692885427              Pay Bank     N           BANK OF AMERICA, NA
03/12/2015  000000388177790          Rtn Loc/BOFD  Y           WELLS FARGO BANK, NA
No Payee Endorsements Found

*Payment # 4*
*3/1/2015*

*47*



Amount:        $4,033.23
Account:       ████████████
Bank Number:

Sequence Number: 8692885427
Capture Date:    03/12/2015
Check Number:    0

017527054

Electronic Endorsements
| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| 03/12/2015 | 008692885427 | ████████ | Pay Bank | N | | BANK OF AMERICA, NA |
| 03/12/2015 | 00000588177790 | ████████ | Rtn Loc/BOFD | Y | | WELLS FARGO BANK, NA |
No Payee Endorsements Found

Amount:      $4,033.23
Account:     ▬▬▬▬▬▬▬
Bank Number: ▬▬▬▬▬▬▬

Sequence Number: 8592445550
Capture Date:    03/31/2015
Check Number:    952301082

**Bank of America** ◆◆◆    Cashier's Check         No. 0952301082

Void After 90 Days                    Date 03/27/15 01:33:47 PM

RECEIVED
MAR 3 1 2015
Teller 08

***$4,033.23

Pay ◇◇◇◇ BANK OF AMERICA

To The
Order Of   SPECIALIZED LOAN SERVICING

Remitter (Purchased By): MARLENE BAILEY

Bank of America, N.A.
PHOENIX, AZ        4/1/2015  Pymt
                   Loan # 1005506474

AUTHORIZED SIGNATURE

⑈ THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK. ⑈    HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENTS.  ⑈

⑈:122101906⑈ 4570024317179⑈

Electronic Endorsements
| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| 03/31/2015 | 00B592445550 | ▬▬▬▬ | Pay Bank | N | | BANK OF AMERICA, NA |
| 03/31/2015 | 000000282382908 | ▬▬▬▬ | Rtn Loc/BOFD | Y | | WELLS FARGO BANK, NA |
| No Payee Endorsements Found | | | | | | |

*Paynet #5*
*4/1/2015*

*5|*



```
Amount:        $4,033.23          Sequence Number: 8592445550
Account:       ███████            Capture Date:    03/31/2015
Bank Number:   ███████            Check Number:    952301082
```

019289157

Electronic Endorsements
Date        Sequence           Bank #       Endrs Type   TRN  RRC   Bank Name
03/31/2015  008592445550       ███████      Pay Bank     N          BANK OF AMERICA, NA
03/31/2015  000000282382908    ███████      Rtn Loc/BOFD Y          WELLS FARGO BANK, NA
No Payee Endorsements Found



**Bank of America** | Cashier's Check | No. 0952301378

Void After 90 Days    Date 04/30/13 10:34:20 AM

SMOKE TREE

Pay

To The
Order Of: SPECIALIZED LOAN SERVICING

Remitter (Purchased By): MARLENE BAILEY

Bank of America, N.A.
PHOENIX, AZ
Loan # 1005506474

***$4,033.23

RECEIVED

By

AUTHORIZED SIGNATURE

⑆122101706⑆ 45700293171⁊⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENTS.



Bank of America 🇺🇸     Cashier's Check     No. 0952301589

Void After 90 Days    01/10/12    Date 05/29/15 01:56:44 PM
NAZ

SMOKE TREE
0007    0001124    0035

Pay     BANK OF AMERICA   FOUR THOUSAND THIRTY THREE DOLLARS AND 23 CENTS     ***$4,033.23

To The Order Of   SPECIALIZED LOAN SERVICING

Remitter (Purchased By): MARLENE BAILEY

Bank of America, N.A.
PHOENIX, AZ

RECEIVED

AUTHORIZED SIGNATURE

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENTS.

# EXHIBIT I

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| | | |
|---|---|---|
| Attorney: | Office: 949.200.8755 | 4533 MacArthur Blvd., Suite 230 |
| Joseph R. Manning, Jr. | Facsimile: 866.843.8308 | Newport Beach, CA 92660 |
| Info@ManningLawOffice.com | | www.ManningLawOffice.com |

June 1, 2015

**Via Certified Mail**
7015 0920 0001 4809 3731

Specialized Loan Servicing LLC
Attn: Customer Care
P.O. Box 636005
Littleton, CO 80163-6005

RE: NOTICE OF ERROR ("NOE") UNDER QUALIFICATION WRITTEN NOTICE"/FAILURE TO MAINTAIN CONTINUITY OF CONTACT/PURSUANT TO 12 C.F.R. SECTION 1024.40(a)(2)

Loan No: 1005506474
Borrowers: Marlene & David Bailey
Property Address: 480 E. ...... Trail, Palm Springs, CA 92....

To Whom It May Concern:

Pursuant to 12 CFR § 1024.35, .... ...... ..... like to be a Notice of Error regarding the loan account of the Borrowers, Marlene & David Bailey, identified above.  Attached is the Borrowers' Third Party Authorization authorizing you to communicate with us regarding the Borrowers' loan. Accordingly, please direct all communication regarding this request to the following address: 4533 MacArthur Blvd., Suite 203, Newport Beach, CA 92660.

Specifically, we believe you are in error for:

1.   Not making "available to a delinquent borrower via telephone personnel "assigned to the borrower as described in paragraph (a)(1) of this section, to respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options until the borrower has made, without incurring a late charge, two consecutive mortgage payments in accordance with the terms of a permanent loss mitigation agreement." 12 C.F.R. Section 1024.40(a)(2).

     a.   On or about February 26, 2015, the borrowers submitted via facsimile to SLS correspondence dated February 25, 2015, attached hereto as **Exhibit A**, and labeled "**Urgent Attention Final Mod Doc Errors & Concerns**". The above-referenced correspondence requested information related to a permanent loss mitigation option offered to Mr. and Ms. Bailey on behalf of SLS. Desiring to enter into a permanent

NOE-Continuity of Contact

i

65

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| Attorney:<br>Joseph R. Manning, Jr.<br>Info@ManningLawOffice.com | Office: 949.200.8755<br>Facsimile: 866.843.8308 | 4533 MacArthur Blvd., Suite 230<br>Newport Beach, CA 92660<br>www.ManningLawOffice.com |
| --- | --- | --- |

loan modification with SLS, based upon terms the borrowers could understand, the request related to specific clauses contained the permanent loan modification.

i. For example, the borrowers requested the following information and asserted errors contained in the Permanent Loan Modification extended to them on or about February 2015:

An explanation of the Escrow Shortage in the amount of $6,899.88 (because the borrowers' payment would be $115.00 more than reflected in the permanent modification provisions);

Failure to disclose an accounting for the $6,899.88 escrow shortage to be paid by the borrowers under the terms of the Permanent Loan Modification;

A more principal accounting of the back payments made by SLS to Bank of America in connection with the land lease recorded against the Subject Property;

4. An explanation for the question why the borrowers were not reviewed for a Principal Forgiveness Program (given they are upside down on their payments/amount owed on the loan in comparison to the property's value) and requested an explanation for why it was not in the Investor's best interest to offer a Principal Forgiveness modification review;

5. A detailed accounting of "Escrow Advances" given the total amount owed was $90,822.17;

6. A detailed disclosure of the "Corporate Advances" contained in Item 1c;" and

7. An explanation of how the borrowers' payments under the permanent loan modification would pay off the principal and interest owed by the borrowers on the loan in full by August 25, 2046.

b. As required by 1024.40(a)(2), SLS had a duty to respond to Mr. and Ms. Bailey's February 25, 2015, inquiry because it was made in connection with a loss mitigation option (the Permanent Loan Modification Offer from February

NOE-Continuity of Contact

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308

4533 MacArthur Blvd., Suite 230
Newport Beach, CA 92660
www.ManningLawOffice.com

2015) and the Borrowers had not yet made two consecutive payments in connection with a permanent loss mitigation option.

2. Accordingly, SLS is in error, pursuant to 12 C.F.R. Section 1024.35(b)(7), for failing to provide accurate information in connection with SLS's permanent loan modification offer to the borrowers. The borrowers reiterate the requests contained in the February 25, 2015, correspondence and contained above in numbers 1, 4, 5, 6, and 7. Further, the borrowers demand SLS correct the errors and maintain both the February 25, 2015, correspondence in number 5 and as reiterated above.

The CFPB rules require that you acknowledge receipt of this notice in writing within five business days and investigate and respond to the errors asserted herein within 30 business days or prior to the foreclosure sale, whichever is earlier. If there is still an investigate and respond by the earlier of the foreclosure sale or by losing on days. After receipt of the error notice, the sale should be cancelled or postponed until our investigation has had time. 12 C.F.R. § 1024.35(a)(3)(i)(B), 12 C.F.R. part 1024 Supplement I, Comment 35(e)(3)(i)(A)-1.

If you fail to provide the requested information, investigate, or correct the errors asserted herein, the borrower will have no choice but to file suit in Superior Court. We look forward to hearing from you.

Sincerely,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

Enc:    Third Party Authorization signed by Borrowers/Exhibit A

NOE-Continuity of Contact

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

## LETTER OF AUTHORIZATION

LENDER/SERVICER: **SLS**                                      LOAN NO: **100550 0474**

BORROWER: Marlene Bailey                                      SOCIAL SECURITY NO.:

CO-BORROWER:

TRUSTEE:                                                      TS NO.:

PROPERTY ADDRESS: 480 E Bogert Trail

CITY: Palm Springs               STATE: CA    ZIP CODE: 92254

IS YOUR PROPERTY ADDRESS THE SAME AS YOUR MAILING ADDRESS? Yes ☐   No ☐

IF NO, PLEASE PROVIDE YOR MAILING ADDRESS:

MAILING ADDRESS: 480 E Bogert Trail

CITY:Palm Springs                STATE: CA    ZIP CODE: 92254

To Whom It May Concern:

I/we, the undersigned, hereby authorize the Lender(s) / Servicer(s) to release information regarding my/our above-referenced account to the Law Office of Joseph R. Manning, Jr., APC ("Agent"); to accept and respond to correspondence (including, but not limited to Qualified Written Requests, Requests for Information and/or Notices of Error); to discuss and negotiate terms for a workout arrangement (including, but not limited to, a loss mitigation, short sale, deed in lieu of foreclosure, etc.); and to negotiate settlement terms and settlement of any lawsuit or potential lawsuit. The specific authorized agents are: Diana Lopez; Jennifer Martinez; Bonita Salazar; Articia Woods; Richard Avelos; Amy Omedo; Joanna Gazzon; Tina Mehrazar; Katie Nahigian; Janet Harris; Craig Cole*; Rachel Hall; Mark Allan.  This authorization is effective from the date of client(s) signature indicated hereinbelow and remains valid for the next 365 consecutive days therefrom.

Should you be in possession of previous "Authorization to Release Lending Information" form, please delete them.

_____                          _5/4/2015_
Borrower                                          Date

_____                          _____
Co-Borrower                                       Date

The Law Office of Joseph R. Manning, Jr., APC          PASSWORD: HELP
4667 MacArthur Blvd, Suite 150, Newport Beach, CA 92660
Office: (949) 200-8755 Fax: (866) 843-8308

PLEASE DO NOT WRITE BELOW THIS LINE. FOR LENDER USE ONLY

_____                          _____
Authorized Lender Signature                       Date

Q6U9AD0064H

9 of 9  Version: MLOLLV6_01082015                          _____INITIALS

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

| Attorney: | Office: 949.200.8755 | 4533 MacArthur Blvd., Suite 230 |
| Joseph R. Manning, Jr. | Facsimile: 866.843.8308 | Newport Beach, CA 92660 |
| Info@ManningLawOffice.com | | www.ManningLawOffice.com |



# MANNING

**NOE-Continuity of Contact**

**MARLENE BAILEY**
480 E. Bogert Trail
Palm Springs, California 92264
(760) 325-1877
(760) 406-4234 Fax
e-mail: mbailey@hollyhhills.com



URGENT!

## TELECOPIER TRANSMITTAL SHEET

SEND TO FAX NUMBER: _720 - 241 - 7526_

TO: _SLS — Loss Mitigate_

COMPANY: _SLS_

* * *

FROM: _Marlene Bailey_

DATE: _2/26/2015_     NO. OF PAGES _3_
(Not including this cover page)

COMMENTS: _Loan # 1005506474 / TS# 9467 0812_
_Please see the attached + acknowledge receipt._
_Thank you_

Should you have any questions regarding this fax, please call (760) 325-1877.

February 25, 2015

SLS Loan # 1005806474

RE: Marlene Y Bailey
480 Bogert Trail, Palm Springs, CA 92264

# URGENT ATTENTION

## FINAL MOD DOC ERRORS & CONCERNS

Sir/Madam,

As ATP (Authorized Third Party) and a seasoned Mortgage Professional, I have some concerns regarding the final modification documentation that was sent to the borrower. There seems to be a number of errors, nondisclosures and/or areas of concern in the documentation and must be addressed ASAP.

As a result of the below outlined concerns it may be necessary to extend the due date on the documentation of February 25, 2015. We hereby request that you extend the trial payment plan until the below errors, nondisclosures and/or areas of concern are addressed. As a sign of good faith we will send the March 1, 2015, cashier check in the amount of $4,033.23 for the "Forth" Trial Payment on or before March 1, 2015.

ERRORS, NONDISCLOSURES & CONCERNS:

1. In the "Congratulations" cover letter of February 12, 2015 (date assumed given referenced cover letter was not dated) that accompanied the modification, it states that there is an Escrow Shortage in the amount of $5,899.66 and that you will collect this shortage interest free over 60 months. However, there is no indication that said shortage was included in the proposed monthly P.I.T.I. payment of $4,025.16 or the proposed impound payment of $1,066.55. The amount of the shortage would constitute an additional $115.00 per month. If the shortage has not been included in the proposed impound payment, the letter should provide disclosure that it is not included. If the shortage has been included in the proposed impound payment, the letter should provide disclosure that it is included. Furthermore, it is unclear as to what the shortage represents. In the "Summary" page under the heading of "Escrow Account" it states that SLS will provide an Escrow Analysis within four weeks of the modification being completed. In order for SLS to determine an escrow shortage of $5,899.66 an escrow analysis must have been completed and therefore no time delayed should be asserted. Our concern is that the monthly P.I.T.I. payment will increase substantially due to your nondisclosure of the analysis at this time and possible

1

accounting error? That being said the absence of this analysis and/or full disclosure becomes an area of concern as it relates to the ultimate affordability of this new monthly P.I.T.I. payment. We hereby request a copy of the analysis used to determine a $6,898.88 shortage as well as full disclosure as to what is being paid in the proposed monthly escrow payment of $1,056.85.

2. In the "Summary" page under the heading of "Escrow Account" you state that the initial monthly escrow payment would include property taxes and insurance premiums. There is no mention of the land lease recorded against the subject property. SLS, and/or the prior servicer B of A, have been paying the land lease shortage for several years. Full disclosure of the obligation is therefore substantiated. As such, this item should be included in the Escrow Account. The current obligations of the property taxes, land lease and insurance premiums, when collected monthly, equal $1,517.91. This does not include the suggested shortage repayment of $115.00. All of the required escrow collections would total $1,632.91. Clearly a collection of $1,056.85 would not be sufficient and therefore the escrow payment would require a minimum increase of $576.36 per month. This is a substantial increase in monthly payment and underwriting debt ratios resulting in an addition hardship of unaffordability for the borrower.

3. SLS received an appraisal on the subject property of $770,000. The total amount owing is $1,090,694.13, plus the escrow shortage. Given the property is upside down with the debt, why was zero Principal Forgiveness considered in the modification review? The SLS NPV decline of July 21, 2014 stated that the National Mortgage Settlement principal forgiveness program was "Not in the best interests of the investor". This was based on a declined workout. Once we sent in the "Change of Circumstances" RMA of August 20, 2014, you were able to approve the borrower for a trial and subsequent modification. Now that we have completed the Trial and received an Approved Modification why would it not be in the best interest of the investor to take advantage of the National Mortgage Settlement Program when the subject property is $300,000+ upside down?

4. One page one of three, "Item 1b" states that there were "Escrow Advances" in the amount of $95,822.17. In order for this to be accurate the land lease payments would have to be included in said advances. Given the land lease does not seem to be considered in the monthly escrow collection (as stated above) we request a detailed disclosure of what items were paid in said "Escrow Advances".

5. One page one of three, "Item 1c" states that there were "Corporate Advances" in the amount of $35,272.85. This is a substantial amount of money in Corporate Advances. We request a detailed disclosure of what items were paid and subsequently charged to the borrower in this category.

2

6. One page one of three, "Item 5" (all paragraphs) states that beginning March 1, 2015, the borrower will make monthly principal and interest payments in the amount of $2,968.61 until the principal and interest are paid in full. This will not be possible if the maturity date of the loan is August 25, 2046 as there would be an outstanding balance of $260,257.00 (approx.). In order for the modified loan to self-terminate as stated in paragraph two, the maturity date would need to be extended to February 1, 2055. The maturity date of August 25, 2046 is only 366 months out, yet the amortization of the new modified loan is 480 months. Why is SLS not extending the maturity date to February 1, 2055? Why is SLS giving reference to a self-terminating loan when that is not possible without extending the maturity date? Additional, if this does end up having a balloon feature in 2046, why is there not a Balloon Rider or Full Disclosure about this feature? Your bracketed "Balloon" or "Modified Balloon Date" is NOT a disclosure. To the average reader this could be misconstrued as the deferred principal balloon outlined in the "Summary". Assuming this is not a typo, I would be inclined to define this lack of disclosure and/or verbiage as misleading, a potential RESPA violation and borderline predatory lending. If there is no typo error in the maturity date of August 25, 2046, the balloon feature will require a FULL DISCLOSURE.

7. Assuming the "Advances" in "Item 1a" are correct, in order to accomplish the "Approved Monthly P.I.T.I. Modified Payment of $4,025.16, SLS would need to recalculate the monthly payment using the "Correct" monthly Escrow collection, of which they have full knowledge of, in the amount of $1,632.91 (approximately), keep the current amortization of 480 months and lower the Principal and Interest payment to $2,392.25. This could be accomplished by lowering the Modified Principal Balance, Enlarging the Deferred Principal Balance, Forgiveness of Debt or by lowering the fixed interest rate from 3.625% to 2.289%.

In closing, the borrower DOES DESIRE to accept a Final Loan Modification offer from SLS but the documents must be correct and full disclosure provided before they can be committed to and signed in the presence of a notary.

The Borrower is prepared to continue making Trail Payments until such time as SLS has had an opportunity to audit and/or make the necessary corrections to the final loan modification documents of February 12, 2015.

I thank you for your prompt attention and response to the above "Errors, Nondisclosures & Concerns".

Ms. Kerrie Bruns -ATP

760-798-2555 — PST — 319 S. Twin Oaks Valley Road, Suite 107-376, San Marcos, CA 92078

3

**Last Transmission**                                    Feb.26.2015  09:23 AM

Name   :

Tel    :

| Date | Time | Type | ID | Duration | Pages | Result |
|------|------|------|-----|----------|-------|--------|
| Feb.26 | 09:21AM | Send | 17202417526 | 02:13 | 4 | OK |

# EXHIBIT J



Evan F. Anderson

Akerman LLP
38th Floor
725 South Figueroa Street
Los Angeles, CA 90017-5438
Tel: 213.688.9500
Fax: 213.627.6342

August 7, 2015

**VIA E-MAIL AND U.S. MAIL**

Katie Nahigian
Manning Law APC
4667 MacArthur Boulevard, Suite 150
Newport Beach, CA  92660

Re:    **Marlene Bailey**
       **Loan No. -6474**
       **Response to escrow accounting inquiry**

Dear Ms. Nahigian:

Please find attached an escrow account breakdown showing the disbursements and payments from the escrow account.  The accounting includes the prior servicer's account history and SLS's account history.

If you would like to discuss this matter in further detail, you may call me using the contact information provided above.  Thank you.

Sincerely,

Evan F. Anderson

Enclosure

akerman.com

{35509911;1}

| SLS Loan # ████6474 | - Prior servicer loan # ████0452 | | |
|---|---|---|---|
| Prior servicer escrow account history | | | |
| Date | Description | Tran amt | Balance |
| 06/08/06 | Deposit for HOI | $1,405.95 | $1,405.95 |
| 06/08/15 | Deposit for Taxes | $1,991.89 | $3,397.84 |
| 07/13/06 | Payment | $1,132.63 | $4,530.47 |
| 08/16/06 | Payment | $1,132.63 | $5,663.10 |
| 09/29/06 | Payment | $1,132.63 | $6,795.73 |
| 10/06/06 | Payment | $1,132.63 | $7,928.36 |
| 11/13/06 | Payment | $1,132.63 | $9,060.99 |
| 11/30/06 | County Tax Disbursement | -$3,786.04 | $5,274.95 |
| 12/08/06 | Payment | $1,132.63 | $6,407.58 |
| 12/29/06 | Interest on Escrow | $66.93 | $6,474.51 |
| 01/16/07 | Payment | $1,132.63 | $7,607.14 |
| 02/14/17 | Payment | $1,132.63 | $8,739.77 |
| 03/16/07 | Payment | $1,132.63 | $9,872.40 |
| 03/30/07 | County Tax Disbursement | -$3,786.04 | $6,086.36 |
| 04/13/07 | HOI Disbursement | -$7,472.74 | -$1,386.38 |
| 04/16/07 | Payment | $1,132.63 | -$253.75 |
| 05/16/07 | Refund for HOI Disbursement | $7,472.74 | $7,218.99 |
| 05/16/07 | Payment | $1,132.63 | $8,351.62 |
| 06/01/07 | HOI Disbursement | -$2,606.15 | $5,745.47 |
| 06/12/07 | Payment | $1,132.63 | $6,878.10 |
| 06/14/07 | Overage Refund | -$4,241.68 | $2,636.42 |
| 07/18/07 | Payment | $881.16 | $3,517.58 |
| 08/15/07 | Payment | $881.16 | $4,398.74 |
| 09/17/07 | Payment | $881.16 | $5,279.90 |
| 10/29/07 | Payment | $881.16 | $6,161.06 |
| 11/30/07 | Payment | $881.16 | $7,042.22 |
| 11/30/07 | County Tax Disbursement | -$6,009.65 | $1,032.57 |
| 12/11/07 | Payment | $881.16 | $1,913.73 |
| 12/31/07 | Interest on Escrow | $99.85 | $2,013.58 |
| 01/31/08 | Payment | $881.16 | $2,894.74 |
| 02/28/08 | Payment | $881.16 | $3,775.90 |
| 03/03/08 | Payment | $881.16 | $4,657.06 |
| 03/10/08 | Reversal of Payment | -$881.16 | $3,775.90 |
| 03/10/08 | Reversal of Payment | -$881.16 | $2,894.74 |
| 03/10/08 | Payment | $881.16 | $3,775.90 |
| 03/24/08 | Payment | $881.16 | $4,657.06 |
| 03/31/08 | County Tax Disbursement | -$6,009.65 | -$1,352.59 |
| 04/10/08 | HOI Disbursement | -$2,529.10 | -$3,881.69 |
| 04/30/08 | Payment | $1,547.87 | -$2,333.82 |
| 05/30/08 | Payment | $1,547.87 | -$785.95 |
| 06/30/08 | Payment | $1,547.87 | $761.92 |
| 07/31/08 | Payment | $1,451.15 | $2,213.07 |
| 09/02/08 | Payment | $1,451.15 | $3,664.22 |

| Date | Description | Tran amt | Balance |
|---|---|---|---|
| 09/02/08 | Payment | $1,451.15 | $5,115.37 |
| 09/08/08 | Reversal of Payment | -$1,451.15 | $3,664.22 |
| 09/30/08 | Payment | $1,451.15 | $5,115.37 |
| 11/03/08 | Payment | $1,451.15 | $6,566.52 |
| 11/13/08 | Reversal of Payment | -$1,451.15 | $5,115.37 |
| 11/28/08 | County Tax Disbursement | -$5,667.37 | -$552.00 |
| 12/01/08 | Payment | $1,451.15 | $899.15 |
| 12/01/08 | Payment | $1,451.15 | $2,350.30 |
| 12/31/08 | Interest on Escrow | $47.75 | $2,398.05 |
| 03/19/09 | County Tax Disbursement | -$5,667.37 | -$3,269.32 |
| 04/14/09 | HOI Disbursement | -$2,729.65 | -$5,998.97 |
| 07/24/09 | HOI Disbursement | -$465.85 | -$6,464.82 |
| 11/25/09 | County Tax Disbursement | -$5,990.98 | -$12,455.80 |
| 12/31/09 | Interest on Escrow | $10.25 | -$12,445.55 |
| 03/25/10 | County Tax Disbursement | -$5,990.98 | -$18,436.53 |
| 04/20/10 | HOI Disbursement | -$3,700.74 | -$22,137.27 |
| 04/26/10 | Ground Lease Payment | -$5,000.00 | -$27,137.27 |
| 04/26/10 | Ground Lease Payment | -$83.00 | -$27,220.27 |
| 11/15/10 | County Tax Disbursement | -$5,748.71 | -$32,968.98 |
| 03/17/11 | County Tax Disbursement | -$5,748.71 | -$38,717.69 |
| 04/08/11 | HOI Disbursement | -$3,913.86 | -$42,631.55 |
| 04/28/11 | Ground Lease Payment | -$5,000.00 | -$47,631.55 |
| 04/28/11 | Ground Lease Payment | -$2,378.35 | -$50,009.90 |
| 11/17/11 | County Tax Disbursement | -$4,374.12 | -$54,384.02 |
| | Ending Escrow Balance with Prior: | | -$54,384.02 |

| SLS escrow account history | | | |
|---|---|---|---|
| Date | Description | Tran amt | Balance |
| | Balance Transferred from Prior: | | -$54,384.02 |
| 03/14/12 | County Tax Disbursement | -$4,374.12 | -$58,758.14 |
| 04/17/12 | HOI Disbursement | -$4,202.84 | -$62,960.98 |
| 11/26/12 | County Tax Disbursement | -$4,765.99 | -$67,726.97 |
| 03/14/13 | County Tax Disbursement | -$4,765.99 | -$72,492.96 |
| 04/11/13 | HOI Disbursement | -$4,857.07 | -$77,350.03 |
| 11/05/13 | County Tax Disbursement | -$5,099.96 | -$82,449.99 |
| 03/04/14 | County Tax Disbursement | -$5,099.96 | -$87,549.95 |
| 07/02/14 | HOI Disbursement | -$1,265.00 | -$88,814.95 |
| 11/07/14 | County Tax Disbursement | -$5,016.76 | -$93,831.71 |
| 12/29/14 | Payment | $1,003.18 | -$92,828.53 |
| 12/29/14 | Payment | $1,003.18 | -$91,825.35 |
| 01/29/15 | Payment | $1,003.18 | -$90,822.17 |
| 02/05/15 | Reversal of Payment | -$1,003.18 | -$91,825.35 |
| 02/05/15 | Reversal of Payment | -$1,003.18 | -$92,828.53 |
| 02/05/15 | Reversal of Payment | -$1,003.18 | -$93,831.71 |
| 02/05/15 | Payment | $1,003.18 | -$92,828.53 |
| 02/05/15 | Payment | $1,003.18 | -$91,825.35 |

| 02/05/15 | Payment | $1,003.18 | -$90,822.17 |
| 2/6/2015 | Reversal of Payment | -$1,003.18 | -$91,825.35 |
| 2/6/2015 | Reversal of Payment | -$1,003.18 | -$92,828.53 |
| 2/6/2015 | Reversal of Payment | -$1,003.18 | -$93,831.71 |
| 2/6/2015 | Payment | $1,003.18 | -$92,828.53 |
| 2/6/2015 | Payment | $1,003.18 | -$91,825.35 |
| 2/6/2015 | Payment | $1,003.18 | -$90,822.17 |
| 3/9/2015 | County Tax Disbursement | -$5,016.76 | -$95,838.93 |
| 6/9/2015 | HOI Disbursement | -$1,415.15 | -$97,254.08 |
| | Current Escrow Balance: | | -$97,254.08 |

# EXHIBIT K

**DOC # 2015-0409776**
09/15/2015 11:46 AM Fees: $31.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY
LPS Default Title & Closing
3220 El Camino Real
Irvine, CA 92602

AND WHEN RECORDED MAIL TO:
NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARLENE #397

T.S. No.: 9462-0812    TSG Order No.: 130240028-CA-MAI  A.P.N.: 009-607-525-6    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

出售通知

注：本文件包含一个信息摘要

매각 공고
참고사항: 본 첨부문서에 정보 요약서가 있습니다

## AVISO DE VENTA
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

## PABATID NG PAGBEBENTA
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

## THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 05/19/2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NBS Default Services, LLC, as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded 06/09/2006 as Document No.: 2006-0418627, of Official Records in the office of the Recorder of Riverside County, California, executed by: MARLENE Y BAILEY, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor,  WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable in full at time of sale by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state).   All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and state, and as more fully described in the attached legal description.

DOC #2015-0409776 Page 2 of 3

Sale Date & Time: 10/05/2015 at 09:00 AM
Sale Location: At the front entrance of the former Corona Police Department at 849 W. Sixth Street, Corona, CA.

The street address and other common designation, if any, of the real property described above is purported to be: 480 E BOGERT TRAIL, PALM SPRINGS, CA 92264-9610

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made in an "AS IS" condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: $1,123,658.99 (Estimated).   Accrued interest and additional advances, if any, will increase this figure prior to sale.   It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call, 916-939-0772 for information regarding the trustee's sale or visit this Internet Web site, www.nationwideposting.com, for information regarding the sale of this property, using the file number assigned to this case, T.S.# 9462-0812. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802
800-766-7751
For Trustee Sale Information Log On To: www.nationwideposting.com or Call: 916-939-0772.

**NBS Default Services, LLC, Kim Coker, Foreclosure Associate**

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.

**LEGAL DESCRIPTION**

A SUBLEASEHOLD INTEREST IN AND TO; LOT NO. 19 OF TRACT NO. 16149 WITHIN THE ALLOTTED LANDS OF THE AGUA CALIENTE BAND OF CAHUILLA INDIANS OF THE AGUA CALIENTE INDIAN RESERVATION, AS SHOWN ON THE MAP THEREOF RECORDED IN BOOK 116, AT PAGES 3 THRU 8, INCLUSIVE OF MAPS, RECORDS OF COUNTY RECORDER, COUNTY OF RIVERSIDE, CALIFORNIA.

# EXHIBIT L

DOC # **2015-0455982**
10/16/2015 11:36 AM Fees: $28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: MARY #420

**RECORDING REQUESTED BY:**

**AND WHEN RECORDED TO:**
Specialized Loan Servicing LLC
8742 Lucent Blvd., Ste. 300, Highlands Ranch, CO 80129

Forward Tax Statements to
the address given above

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: **9462-0812**                     TSG Order #: **130240029-CA-MAI**

## TRUSTEE'S DEED UPON SALE

A.P.N.: **009-607-525-6**               Transfer Tax: **$0.00**

The Grantee Herein **was** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **1,133,473.03**
The Amount Paid by the Grantee was **675,750.00**
Said Property is in the City of **PALM SPRINGS**, County of **Riverside**

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

**NBS Default Services, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEYS** without covenant or warranty, express or implied, to: **The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10** (herein called Grantee) but without covenant or warranty, expressed or implied, to the property situated in the county of **Riverside**, State of California, described as follows:

A SUBLEASEHOLD INTEREST IN AND TO; LOT NO. 19 OF TRACT NO. 16149 WITHIN THE ALLOTTED LANDS OF THE AGUA CALIENTE BAND OF CAHUILLA INDIANS OF THE AGUA CALIENTE INDIAN RESERVATION, AS SHOWN ON THE MAP THEREOF RECORDED IN BOOK 116, AT PAGES 3 THRU 8, INCLUSIVE OF MAPS, RECORDS OF COUNTY RECORDER, COUNTY OF RIVERSIDE, CALIFORNIA.

This deed is made pursuant to the powers, including the power of sale conferred upon Trustee (or to Successor Trustee) by the Deed of Trust dated **05/19/2006** made to **MARLENE Y BAILEY, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, and recorded on **06/09/2006**, in the office of the County Recorder of **Riverside** County, California, as **Document No.: 2006-0418627**, Trustee (or Successor Trustee) having complied with all applicable statutory

### MAIL TAX STATEMENTS TO: THE ABOVE MENTIONED ADDRESS

TDUS                                    1                                    2146908693

provisions and having performed all of his duties under the said Deed of Trust.

All requirements per law and of said Deed of Trust relating to this sale to notice thereof having been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **10/13/2015**, Grantee, being the highest bidder at said sale became the purchaser of said property for the bid amount, being **$675,750.00**, in lawful money of the United States, in proper, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

Date: **October 13, 2015**                    **NBS Default Services, LLC**

By: _____

  **Gaby Ospino**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On **OCT 1 4 2015** before me, **Henry J. Wojtusik** _____, a Notary Public, personally appeared, Gaby Ospino, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

HENRY J. WOJTUSIK
Commission # 2100006
Notary Public - California
Los Angeles County
My Comm. Expires Feb 13, 2019

HENRY J. WOJTUSIK
Commission # 2100006
Notary Public - California
Los Angeles County
My Comm. Expires Feb 13, 2019

TDUS

2

2146908693

# EXHIBIT "B"

1  **AKERMAN LLP**
   KAREN P. CICCONE (SBN 143432)
2  Email: karen.ciccone@akerman.com
   EVAN F. ANDERSON (SBN 276438)
3  Email: evan.anderson@akerman.com
   725 South Figueroa Street, 38th Floor
4  Los Angeles, California 90017-5433
   Telephone: (213) 688-9500
5  Facsimile: (213) 627-6342

6  Attorneys for Defendants
   SPECIALIZED LOAN SERVICING LLC; and
7  THE BANK OF NEW YORK MELLON FKA
   THE BANK OF NEW YORK, AS TRUSTEE
8  FOR THE CERTIFICATEHOLDERS OF THE
   CWALT, INC. ALTERNATIVE LOAN TRUST
9  2006-OA10

10              **SUPERIOR COURT OF CALIFORNIA**

11         **RIVERSIDE COUNTY—PALM SPRINGS COURTHOUSE**

12

13  MARLENE Y. BAILEY, an individual,          Case No. PSC1504566

14              Plaintiff,                      (Assigned to the Hon. David Chapman)

15  v.                                          **DEFENDANTS SPECIALIZED LOAN**
                                                **SERVICING LLC AND THE BANK OF**
16  SPECIALIZED LOAN SERVICING LLC, a          **NEW YORK MELLON'S MOTION TO**
    business entity form unknown; THE BANK OF  **QUASH PLAINTIFF'S COMPLAINT**
17  NEW YORK MELLON FKA THE BANK OF
    NEW YORK, AS TRUSTEE FOR THE               Documents File Concurrently Herewith:
18  CERTIFICATEHOLDERS OF THE CWALT,           1.  Request for Judicial Notice
    INC. ALTERNATIVE LOAN TRUST 2006-          2.  Declaration of Evan Anderson
19  OA10, a business entity form unknown; NBS  3.  Proposed Order
    DEFAULT SERVICES, LLC, a business entity
20  form unknown; and DOES 1-100, inclusive, . Hearing:
                                                Date:    November 25, 2015
21              Defendants.                     Time:    8:30 a.m.
                                                Dept.:   PS2
22

23

24         **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

25         **PLEASE TAKE NOTICE** that on November 25, 2015, at 8:30 a.m. or as soon thereafter as

26  counsel may be heard, in Department PS2 of the Riverside County Superior Court located at 3255 E.

27  Tahquitz Canyon Way, Palm Springs, California 92262, defendants Specialized Loan Servicing LLC

28  (**SLS**) and the Bank of New York Mellon (**BNYM**) (collectively, **defendants**) will move to quash

{36401311;2}                                    1
                **DEFENDANTS' MOTION TO QUASH PLAINTIFF'S COMPLAINT**          CASE NO.PSC1504566

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

plaintiff Marlene Bailey's (**plaintiff**) complaint for improper jurisdiction and venue.  This motion will be based on the following grounds:

1. **This Court lacks jurisdiction** because all causes of action have been removed to federal court, and are currently pending in the Central District Court.

2. Plaintiff has recourse in the District Court, and failed to seek leave to amend; **plaintiff is improperly forum shopping.**

3. All of the events in plaintiff's complaint occurred *while* the District Court action was pending, and plaintiff had every opportunity to raise any claim or objection with the District Court.

4. **Venue is improper;** plaintiff has created multiple venues in state and federal court, which unduly burden defendants and create additional fees and costs.

The motion will be based on Code of Civil Procedure § 418.10, this notice, the memorandum of points and authorities filed herewith, all matters of which the court may take judicial notice, all pleadings, records and files in this action, and such evidence and argument as may be presented at or before the hearing on this motion.

Dated:  October 29, 2015

AKERMAN LLP

By: _____
Karen P. Ciccone
Evan F. Anderson
Attorneys for Defendants
SPECIALIZED LOAN SERVICING LLC and
THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF THE
CWALT, INC. ALTERNATIVE LOAN
TRUST 2006-OA10

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

As this Court found in denying plaintiff's ex parte application for a temporary restraining order, there is already a pending action in the Central District Court, based on the same events and transactions.  Plaintiff blatantly abuses the judicial system by filing this action instead of asserting her claims in the existing District Court action.

This Court, moreover, has no jurisdiction in this case as all causes of action have been removed to federal court. See declaration of Evan Anderson, filed in support.  This Court should therefore dismiss plaintiff's complaint.

The sole reason plaintiff commenced this action was to stall the foreclosure sale.  Plaintiff is improperly forum shopping, and seeking duplicative relief and judicial determination of the same causes of action.

Plaintiff's utter inaction in the District Court case has proven fatal to her futile attempt to stall the foreclosure.  Realizing her case is doomed in District Court, plaintiff unlawfully circumvents procedure by bringing a new lawsuit in state court, mischaracterizing it as a novel claim, when in fact, the claims are based entirely on events that occurred during the District Court action.  Like the District Court action, plaintiff fails to demonstrate any likelihood of success.  This Court should refuse to hear this action, and instead, require plaintiff to assert her claims in the existing District Court action.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Obtained a Loan for $757,000.

On May 19, 2006, plaintiff Marlene Bailey obtained a loan for $757,000 from Countrywide Home Loans, Inc. (**Countrywide**).  See Request for Judicial Notice (**RJN**), Ex. A.  Countrywide was the original lender under the promissory note and deed of trust.  The deed of trust secured the note, and was recorded against the property in the Riverside County recorder's office as document number 2006-0418627.  RJN, Ex. A. The deed of trust also named ReconTrust Company, N.A. (**ReconTrust**) as the trustee, and Mortgage Electronic Registration Systems, Inc. (**MERS**) as the beneficiary. RJN, Ex. A.

1

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL: (213) 688-9500 – FAX: (213) 627-6342

1   The promissory note and deed of trust were transferred and assigned to the Bank of New

2   York Mellon fka the Bank of New York, as Trustee for the Certificateholders CWALT, Inc.,

3   Alternative Loan Trust 2006-OA10 Mortgage Pass-Through Certificates.  MERS executed a formal

4   assignment of the deed of trust on July 16, 2012, and the assignment was recorded in the Riverside

5   County recorder's office on August 2, 2012, as document number 2012-0365855.  RJN, Ex. B.

6   Bank of America, N.A. was the initial servicer of the loan until December 15, 2011, when the

7   loan servicing transferred to Specialized Loan Servicing LLC (**SLS**).  SLS began servicing the loan

8   on December 16, 2011.

9   NBS Default Services, LLC (**NBS**) was substituted as the new trustee under the deed of trust.

10   A substitution of trustee was recorded in the Riverside County recorder's office on December 4,

11   2013.  RJN, Ex. C.

12   **B.    Plaintiff Defaulted on the Loan, and the Foreclosure Process Started.**

13   Plaintiff defaulted on the loan, and SLS worked with plaintiff through loss mitigation.  SLS

14   approved Bailey for a standard trial to modification program.  On October 21, 2014, SLS sent Bailey

15   the approval letter.  After Bailey made the three trial plan payments, SLS sent Bailey the permanent

16   loan modification agreement.  Bailey was required to execute and send SLS the permanent loan

17   modification agreement by February 28, 2015.  Bailey did not send SLS the loan modification offer

18   within the deadline, and the loan modification agreement was cancelled.

19   On April 30, 2015, Bailey was notified that the standard trial to modification program

20   alternative was denied.  On May 1, 2015, SLS sent Bailey a letter stating the final loan modification

21   was denied, and in researching the account, no errors were found.

22   Bailey failed to cure the default or tender the entire balance due under the loan, and the

23   property was sold at a trustee's sale.  RJN, Ex. D.

24   **III.    LEGAL STANDARD**

25   Under CCP § 418.10, a part may move to quash for lack of jurisdiction of the court.  If the

26   motion is granted, the court may dismiss the action under CCP § 581(h).

27

28

## IV.  ARGUMENT

**A.     This Court Lacks Jurisdiction Based on the Pending District Court Action.**

Plaintiff originally filed suit in this Court against the *same* defendants, and defendants properly removed the case to the Central District Court, as case no. 5:14-cv-01586-JGB-KKx. Jurisdiction was therefore divested from this Court: "when an action is removed from state court to federal court, the state court loses jurisdiction to proceed further with the matter." *In re M.M.*, 154 Cal.App.4th 897, 912 (2007).  As the Ninth Circuit explained: "[t]he removal of an action to federal court necessarily divests state and local courts of their jurisdiction over a particular dispute. *Cal. Ex rel. Sacramento Metro. Air Qualify v. U.S.*, 215 F.3d 1005, 1011 (9th Cir. 2000).  Thus, a removal petition deprives the state court of jurisdiction as soon as it is filed and served. *People v. Bhakta*, 135 Cal.App.4th 631, 636 (2006).

Plaintiff's state court complaint asserts the *same* causes of action as the district court complaint for breach of contract, violations of Civil Code § 2924, and violations of California Business and Professions Code § 17200.  And as demonstrated by the District Court docket, the action is still pending.  In fact, defendants have answered and moved for summary judgment.  The state court action serves only to duplicate adjudication, and waste judicial resources.

Instead of requesting leave to amend the complaint, plaintiff is unlawfully forum shopping by bringing this action in state court, circumventing federal procedure and seeking duplicative relief.

All of plaintiff's causes of action are based on the same facts and events that occurred during the District Court action.  As stated above, plaintiff fails to explain how such relief could not have been requested or asserted in the District Court.  Nor can plaintiff explain how she failed to properly amend her complaint in the District Court, given her knowledge at the time.  Plaintiff improperly seeks to take a second bite of the apple.

**B.     Venue is Improper Based on the Pending District Court Action.**

Because defendants have already removed this action to the Central District Court, venue is also improper.  Plaintiff is forum shopping, and creating two venues (state and federal court) that defendants must litigate in.  The purpose of the venue statutes is to avoid filing an action where it would be difficult or impractical for a defendant to defend. *See Smith v. Smith*, 88 Cal. 572, 576

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   (1891); *Alexander v. Superior Court*, 114 Cal.App.4th 723, 731 (2003). Here, plaintiff is unlawfully

2   creating separate venues to re-litigate claims involving the same set of facts in both cases, forcing

3   defendants to unnecessarily incur additional fees and costs. This Court should dismiss the action,

4   and require plaintiff to bring her claims in the pending District Court action.

5                                    **V.    CONCLUSION**

6        Because the Central District Court maintains jurisdiction, this Court lacks jurisdiction and the

7   venue is improper. This Court should dismiss plaintiff's complaint in its entirety.

8   Dated: October 29, 2015                        **AKERMAN LLP**

9

10                                    By: _____
                                          Karen P. Ciccone
11                                        Evan F. Anderson
                                      Attorneys for Defendants
12                                    SPECIALIZED LOAN SERVICING LLC and
                                      THE BANK OF NEW YORK MELLON FKA
13                                    THE BANK OF NEW YORK, AS TRUSTEE
                                      FOR THE CERTIFICATEHOLDERS OF THE
14                                    CWALT,   INC.   ALTERNATIVE   LOAN
                                      TRUST 2006-OA10
15

16

17

18

19

20

21

22

23

24

25

26

27

28

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 725 South Figueroa Street, 38th Floor, Los Angeles, California 90017.

On October 29, 2015, I served the following document(s) described as:

**DEFENDANTS SPECIALIZED LOAN SERVICING LLC AND THE BANK OF NEW YORK MELLON'S MOTION TO QUASH PLAINTIFF'S COMPLAINT**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Joseph R. Manning, Jr., Esq.                 *Attorneys for Plaintiff*
LAW OFFICES OF JOSEPH R.                      *MARLENE Y. BAILEY*
MANNING, JR.
4667 MacArthur Blvd., Suite 150
Newport Beach, California 92660
Tel.: (949) 200-8755
Fax: (866) 843-8308

☐ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express , an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐ (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger service will be filed under separate cover.

☐ (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1   ☐   (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

4   ☐   (CM/ECF ELECTRONIC FILING) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

8   ☒   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

9   ☐   (Federal)   I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 29, 2015, at Los Angeles, California.

| Suzanne I. Jimenez | *Suzanne I. Jimenez* |
| (Type or print name) | (Signature) |

AKERMAN LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

2

CASE NO.PSC1504566

**REQUEST FOR JUDICIAL NOTICE FILED IN SUPPORT OF DEFENDANTS' MOTION TO QUASH**